## CROWLEY *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF PORTO RICO.

No. 205. Submitted April 12, 1904.—Decided May 31, 1904.

Where the accused contends in the District Court of the United States for the District of Porto Rico, that under the provisions of the Foraker act of April 12, 1900, 31 Stat. 77, the qualifications of the grand jurors by whom he was indicted should have been controlled by the local law of January 31, 1901, and the court decides adversely, a right is claimed under a statute of the United States and denied; and under § 35 of the Foraker act this court has jurisdiction on writ of error to review the judgment.

Under §§ 14 and 34 of the Foraker act providing that the District Court of the United States for the District of Porto Rico shall have jurisdiction in all cases cognizant in the Circuit Courts of the United States and shall proceed therein in the same manner as a Circuit Court, the provisions of § 800, Rev. Stat., apply to criminal prosecutions, and the court must recognize any valid existing local statute as to the qualification of jurors in the same manner as a Circuit Court of the United States is controlled in criminal prosecutions by the applicable statute of the State in which it is sitting.

The disqualification of a grand juror prescribed by statute is a matter of substance which cannot be regarded as a mere defect or imperfection within the meaning of § 1025, Rev. Stat.

After April 1, 1901, there was a local statute in Porto Rico, regulating the qualifications of jurors and the presence of persons on the grand jury of the District Court of the United States for the District of Porto Rico disqualified under that act and who were summoned to serve after the act took effect, vitiates the indictment when the facts are seasonably brought to the attention of the court.

An objection by pleas in abatement, and before arraignment of the accused, to an indictment on the ground that some of the grand jurors were disqualified by law, was in due time and was made in a proper way.

*Quære* and not decided whether the presence of jurors disqualified by the act, but summoned before it took effect, would affect an indictment found after the act took effect.

THE plaintiff in error was indicted in the District Court of the United States for the District of Porto Rico as constituted by the act of Congress of April 12, 1900, entitled "An act temporarily to provide revenues and a civil government for Porto Rico, and for other purposes." 31 Stat. 77, c. 191.

The indictment was based upon certain sections of the Revised Statutes of the United States relating to crimes committed by persons employed in the postal service. Rev. Stat. §§ 5467, 5468 and 5469. The punishment for the offence here charged was imprisonment at hard labor for one year and not exceeding five years.

After the return of the indictment the accused filed a plea in abatement, which questioned the competency of certain jurors who participated in the finding of the indictment.

As the action of the court on that plea constitutes the controlling question in the case, the plea is given in full as follows:

"Now comes the defendant, Harold Crowley, and pleads in abatement to the indictment returned herein, and says that on Monday, the 8th day of April, 1901, there appeared in this court at San Juan, it being the first day of said term, the following-named persons: Manuel Romero Haxthausen, Pedro Fernandez, Alex. Nones, John D. H. Luce, Antonio Blanco, Manuel Andino Pacheco, E. L. Arnold, Henry V. Dooley, J. Ramon Latimer, Miguel Olmedo, Ramon Gandie, Charles H. Post, numbering twelve in all, which said persons were then and there, by the direction of the court and the marshal,

placed in the jury box, to constitute the panel for the grand jury of this said April term, 1901, of this court.

"Whereupon the court then ordered the marshal to summon other persons to fill up the panel of the said grand jury, and immediately the marshal of the court sent his deputy out of the court room and into the city of San Juan to summon other jurors for such grand jury. Within a few minutes thereafter the marshal brought into court Frank Antonsanti, (returned as Antonio Santi and Frank Santi, as appears by the minutes of this court,) Hugo Stern and William Bowen, the said persons not having been then and there bystanders in the court. The said panel then being incomplete, the marshal placed W. H. Holt, Jr., in the box, he being at the time a bystander in said court.

"Defendant says that thereupon the grand jury was constituted from the persons above named, and, after being sworn, proceeded to render a true bill against the defendant, which said alleged true bill on indictment was by the said grand jury, constituted as aforesaid, returned and presented to this court on Wednesday, April tenth, 1901.

"Defendant says that by an act of the legislative assembly of Porto Rico, which took effect January 31, 1901, it was provided (§ 3) that jurors shall have the following qualifications, among others:

"1st. A male citizen of the United States or of Porto Rico, of the age of twenty-one years and not more than sixty years, who shall have been a resident of the island one year, and of the district or county ninety days before being selected and returned.

"4th. Assessed on the last assessment roll of the district or county on property of the value of at least two hundred dollars belonging to him.

"Sec. 4. A person is not competent to act as a juror, 1st, who does not possess the qualifications prescribed by the preceding section—which said provisions were in full force and effect at and before the time that all of the persons were sum-

moned and impanelled and returned said indictment as aforesaid.

"That by the law of Porto Rico as aforesaid causes of challenge to jurors are and were at said time last above mentioned a want of any of the qualifications prescribed by law to render a person a competent juror. Defendant [states] that Manuel Adino is and was at the time above mentioned a citizen of the Republic of Venezuela. That W. H. Holt, Jr., has not been a citizen of Porto Rico for one year prior to the dates and time above mentioned when said jury was so summoned, impanelled and returned and when said alleged indictment was returned.

"Defendant says that at the same time last above mentioned the following persons, composing and constituting the said grand jury, were not assessed on the last assessment roll of any of the districts of Porto Rico on property of the value of two hundred dollars belonging to him: Antonio Blanco, Manuel Andino Pacheco, Miguel Olmedo, Charles H. Post, Frank Antonsanti, or Frank Santi, or Antonio Santi, W. H. Holt, Jr., William Bowen.

"Defendant further says that the following persons, composing and constituting said grand jury, were not at the time above mentioned publicly drawn from the box, containing at the time of each drawing the names of not less than three hundred persons, possessing the qualifications prescribed in section 800 of the Revised Statutes, and which said names (hereinafter set out) had not been placed therein by the clerk of this court and a jury commissioner, as provided by act of June 30, 1879.

"Such persons whose names were not in said box and selected and summoned in the manner as aforesaid at the dates and times aforesaid were Hugo Stern, W. H. Holt, Jr., Frank Antonsanti, *alias* Frank Santi, *alias* Antonio Santi, William Bowen.

"Defendant says that no writs of *venire facias* were directed by the court against the said last above named persons from

the clerk's office, signed by the clerk or his deputy, nor returned in the manner provided by Revised Statutes, § 803. Defendant says that he was not present in court at the time of the selection, summoning and impanelling of the jury aforesaid, and has had no opportunity to make any challenges to the same as the members thereof, because he did not know of said action and was not at the time represented by counsel, but that he has this day learned of the aforesaid acts for the first time and therefore immediately presents this plea.

"Defendant says that he has been and would be greatly prejudiced by the improper and illegal selection and impanelling of such grand jury as aforesaid, as it was composed at the time aforesaid of persons disqualified to act and who were not residents or taxpayers of Porto Rico, as required by law and because of their unfamiliarities with the island and the conditions and circumstances, material matters in this case and relevant thereto, some of said jurors as aforesaid having been but a few months in the island and temporarily sojourning herein.

"In addition to W. H. Holt, Jr., and William Baun, the following gentlemen of the grand jury were American citizens: John D. H. Luce, E. L. Arnold, Henry W. Dooley, J. Ramon Latimer, foreman thereof, Charles H. Post, Frank Antonsanti, by reason of which and their supposed knowledge of such practices by grand juries in the courts of the United States might, and as defendant believes did, *contend* the deliberations of said jury so as to induce a finding of indictment where the Porto Rican citizens thereof might not have otherwise done."

The United States demurred to the plea upon the ground that the matters set forth in it, so far as they controlled or were applicable to the summoning and empanelling of a grand jury in the court below, disclosed no illegality therein and constituted no reason why the accused should not be required to plead to the indictment.

The demurrer to the plea was sustained and the plea overruled. The defendant then demurred to the indictment, and, the demurrer being overruled, he pleaded to the jurisdiction

of the court upon the ground that it had no authority to pro-
ceed at its then special term, but could only proceed at a
regular term. That plea was also overruled. The accused
was then arraigned and pleaded not guilty, and a trial was had,
resulting in a verdict of guilty and a sentence to four years'
imprisonment in the penitentiary.

*Mr. Richard Crowley* for plaintiff in error.

*Mr. Assistant Attorney General McReynolds* for the United
States.

MR. JUSTICE HARLAN, after making the foregoing statement,
delivered the opinion of the court.

The first question is one of the jurisdiction of this court;
the Government insisting that, under existing statutes, we are
without authority to review the judgment in this case.

By the thirty-fifth section of the Foraker act of April 12,
1900, 31 Stat. 85, c. 191, it is provided, among other things,
that writs of error and appeals to this court from the final
decisions of the District Courts of the United States shall be
allowed in all cases where "an act of Congress is brought in
question and the right claimed thereunder is denied." In this
case that act was brought in question by the contention of the
parties—the contention of the accused being, in substance,
that pursuant to that act of Congress the court below, in the
matter of the qualifications of grand jurors, should have been
controlled by the provisions of the local law relating to jurors,
in connection with the statutes of the United States relating
to the organization of grand juries and the trial and disposi-
tion of criminal causes; and the court below deciding that,
notwithstanding the Foraker act, the local act of January 31,
1901, referred to in the plea, was not applicable to this prosecu-
tion, and that the grand jury finding the indictment, if a grand
jury was necessary, was organized consistently with the laws
of the United States under which the court proceeded. It

thus appears that the accused claimed a right under the act of Congress and under the Revised Statutes of the United States, which, it is alleged, was denied to him in the court below. This court has, therefore, jurisdiction to inquire whether there is anything of substance in that claim.

The question presented by the opposing views of the parties is not free from difficulty. By section 14 of the Foraker act it is provided that the statutory laws of the United States, not locally inapplicable, except as otherwise provided, shall have the same force and effect in Porto Rico as in the United States, § 14. And by section 34 it is provided that, in addition to the ordinary jurisdiction of District Courts of the United States, the District Court of the United States for Porto Rico shall have jurisdiction "of all cases cognizant in the Circuit Courts of the United States, and shall proceed therein in the same manner as a Circuit Court." § 34.

Turning to the statutes of the United States, we find that "jurors to serve in the courts of the United States, in each State respectively, shall have the same qualifications" (subject to certain provisions and exceptions not material to be mentioned here) "as jurors of the highest court of law in that State may have and be entitled to *at the time* when such jurors for service in the courts of the United States *are summoned*." § 800.

Taking these statutory provisions all together, and having regard to the general scope of the Foraker act, it is manifest that Congress intended that criminal prosecutions in the District Court of the United States in Porto Rico, for offences against the United States, should be conducted in the same manner as like prosecutions in the Circuit Courts of the United States; the court in Porto Rico recognizing any valid *existing* local statute relating to the qualifications for jurors, just as a Circuit Court of the United States, in criminal prosecutions, would be controlled, (Rev. Stat. § 800,) in respect of the qualifications of jurors, by the applicable statutes of the State in which it was sitting.

So that we must inquire whether there was in existence any local statute relating to the qualifications of jurors by which the court below should have been controlled.

The plea in abatement, referring to certain provisions in a statute of Porto Rico prescribing the qualifications of jurors, states that it took effect January 31, 1901. That is a mistake. It is true that the statute was passed on that day, but it did not take effect until April 1, 1901. Rev. Stat. & Codes of Porto Rico, 1902, pp. 172, 210, § 160.

The plea correctly states that by that statute—the authority of the legislature of Porto Rico to pass it not being questioned —it was provided that a person was not competent to act as a juror who was not a male citizen of the United States or of Porto Rico, of the age of twenty-one years, and not more than sixty years; who had not been a resident of the island one year and of the district or county ninety days before being selected and returned; or who was not assessed on the last assessment roll of the district or county on property of the value of at least two hundred dollars, belonging to him. § 3.

In a brief opinion, made part of the record, the court below referred to the date on which the local statute took effect— April 1, 1901—and stated that the record showed that the venire of grand jurors for the term was executed and the jurors summoned *prior to that date.* This must be construed as applying only to those jurors who were summoned under the regular venire; for, it is distinctly shown by the record that the court convened April 8, 1901, after the local statute went into effect, and that of those participating in the finding of the indictment, four—Antonsanti, Stern, Bowen and Holt —were summoned by the marshal, after that date, under the order of the court, to complete the panel of the grand jury. And the demurrer to the plea admits that Antonsanti, Bowen, and Holt were of those thus specially summoned after the court convened, and were not, when selected as jurors, assessed on the last assessment as owners of property of the required value; and that Holt had not been a resident of the island for one

year prior to his being summoned to serve on the grand jury. It thus appears that after the local statute took effect three persons were summoned by the marshal and put on the grand jury who were disqualified by that statute to serve. We perceive no reason why the District Court of the United States for Porto Rico should not have followed that statute when organizing the grand jury. It was then the law of Porto Rico. There was no difficulty in applying its provisions prescribing the qualifications of jurors to pending criminal prosecutions in the court below. One of the functions of that court was to enforce the laws of Porto Rico. If the court had given effect to the above act and held those to be disqualified as jurors who were declared by its provisions to be incompetent, then it would have proceeded—as it was required by the Revised Statutes of the United States and by the Foraker act to proceed—"in the same manner as a Circuit Court" of the United States sitting in a State would proceed under the law of such State prescribing the qualifications of jurors. But it did not proceed in that manner. It refused to follow the local statute.

It remains now to inquire whether the objection to the jurors above named was taken in the proper way and in due time. Can such an objection be made, as was done here, by plea in abatement after the return of the indictment? Upon this point the authorities are not in harmony. The question is not controlled by any statute, and must depend on principles of general law applicable to criminal proceedings in civilized countries.

Some of the cases have gone so far as to hold that an objection to the personal qualifications of grand jurors is not available for the accused unless made before the indictment is returned in court. Such a rule would, in many cases, operate to deny altogether the right of an accused to question the qualifications of those who found the indictment against him; for he may not know, indeed, is not entitled, of right, to know, that his acts are the subject of examination by the

grand jury. In *Commonwealth* v. *Smith*, 9 Massachusetts, 106, a case often referred to, the court said that "objections to the personal qualifications of the jurors, or to the legality of the returns, are to be made before the indictment is found." But the court took care to observe that the decision was not rested on that ground. And in the later case of *Commonwealth* v. *Parker*, 2 Pick. 550, 563, Chief Justice Parker, referring to *Commonwealth* v. *Smith*, remarked: "It is there said that objections to the personal qualifications of the grand jurors, or to the legality of the returns, are to be made before the indictment is found. It is not necessary to apply the remark here, and we have some doubts as to the correctness of it in all cases; and the case in which it was made was determined on another point."

One of the earliest cases in this country in which the question arose was that of *Commonwealth* v. *Cherry*, 2 Va. Cas. 20, decided in 1815. It was there held that if a grand juror was disqualified, the indictment or presentment, after being found, could be avoided by plea in abatement.

With rare exceptions this rule is recognized and followed in the different States. It will be appropriate to refer to some of the cases.

In *State* v. *Symonds*, 36 Maine, 128, 132, an objection that the indictment was not found by the required number of legal grand jurors, being taken on motion in writing in the nature of a plea of abatement at the arraignment of the accused, was held to be in season and available. Later, in *State* v. *Carver*, 49 Maine, 588, 594, it was said that objections to the competency of grand jurors by whom an indictment was found came too late if made after verdict, but must be pleaded in abatement. See also *State* v. *Clough*, 49 Maine, 573, 577. In *State* v. *Herndon*, 5 Blackf. 75, it was ruled that if a grand juror was disqualified for any reason, the accused may, before issue joined, plead the objection in avoidance. In *Doyle* v. *State*, 17 Ohio, 222, an objection, by special plea, that one of the grand jurors by whom the indictment was found was dis-

qualified to act, was held not to come too late—the court saying that "no objection can come too late which discloses the fact that a person has been put to answer a crime in a mode violating his legal and constitutional rights."

In *McQuillen* v. *State*, 8 S. & M. 587, 597, the High Court of Errors and Appeals of Mississippi fully considered the question. Chief Justice Sharkey, delivering the judgment of the court, after observing that no one can be called to answer a charge against him, unless it has been preferred according to the forms of law, and that any one indicted by a grand jury can deny their power, said: "The question is, how is this to be done? A prisoner who is in court, and against whom an indictment is about to be preferred, may undoubtedly challenge for cause; this is not questioned. But the grand jury may find an indictment against a person who is not in court; how is he to avail himself of a defective organization of the grand jury? If he cannot do it by plea, he cannot do it in any way, and the law works unequally by allowing one class of persons to object to the competency of the grand jury, whilst another class has no such privilege. This cannot be. The law furnishes the same security to all, and the same principle which gives to a prisoner in court the right to challenge gives to one who is not in court the right to accomplish the same end by plea, and the current of authorities sustains such a plea. True some may be found the other way, but it is believed that a large majority of the decisions are in favor of the plea. To the list of authorities cited by counsel may be added the name of Sir Matthew Hale, which would seem to be sufficient to put the question at rest. 2 Hale's Pleas of the Crown, 155. *Vide* also *Sir William Withipole's Case*, Cro. Car. 134, 147." See also *Rawls* v. *State*, 8 S. & M. 599, 609.

The same court, in a later case, sustaining the right of accused to challenge, by plea in abatement, the competency of the grand jury by which he is indicted, said: "This privilege arises not alone from the legal principles, that indictments not found by twelve good and lawful men at the least are void and

erroneous at common law, and, therefore, some mode must be left open for ascertaining the fact, but is well sustained as a method for insuring to accused persons a fair and impartial trial. Such persons are not present when the grand jurors are empanelled, perhaps have not been made subjects of complaint or even suspicion. It certainly would not be right to estop a party from pleading a matter to which he could not otherwise except.

"The interest of an accused person under indictment with the grand jury commences at the time of the finding of the indictment. This is the point of time when, as to him, the legal number of qualified men must exist upon the grand inquest. Indictments not found by at least twelve good and lawful men are void at common law. Cro. Eliz. 654; 2 Burr. 1088; 2 Hawk. P. C. 307. It is said by Hawkins, P. C. B. 2, ch. 25, sec. 28, that if any one of the grand jury, who find an indictment, be within any one of the exceptions in the statute, he vitiates the whole, though ever so many unexceptionable persons joined with him in finding it." *Barney* v. *State*, 12 S. & M. 68, 72.

In *State* v. *Seaborn*, 4 Dev. 305, 311, and again in *State* v. *Martin*, 2 Iredell, 101, 120, the Supreme Court of North Carolina, speaking in each case by Chief Justice Ruffin, held that a plea in abatement, filed at the time of arraignment, was an appropriate mode of raising the question of the validity of an indictment as affected by the disqualification of a grand juror.

A leading case upon the question is *Vanhook* v. *State*, 12 Texas, 252, 268. The court there said: "The better opinion, to be deduced from the authorities to which we have access, seems to be that irregularities in selecting and impanelling the grand jury, which do not relate to the competency of individual jurors, can, in general, only be objected by a challenge to the array. But that the incompetency, or want of the requisite qualifications of the jurors, may be pleaded in abatement to the indictment. And this doctrine and distinction

seems founded on principle. It is the right of the accused to have the question of his guilt decided by two competent juries before he is condemned to punishment. It is his right, in the first place, to have the accusation passed upon, before he can be called upon to answer to the charge of crime, by a grand jury composed of good and lawful men. If the jury be not composed of such men as possess the requisite qualifications, he ought not to be put upon his trial upon a charge preferred by them; but should be permitted to plead their incompetency to prefer the charge and put him upon his trial, in avoidance of the indictment. Otherwise he may be compelled to answer to a criminal charge preferred by men who are infamous, or unworthy to be his accusers."

In *State v. Duncan and Trott*, 7 Yerger, 271, 275, the accused pleaded in abatement that one of the grand jurors who participated in the finding of the indictment was disqualified. The Supreme Court of Tennessee, speaking by Chief Justice Catron, afterwards a member of this court, said: "Suppose an indictment was found by a grand jury, no person composing which was qualified? All will admit the indictment would be merely void in fact, and ought not to be answered if the fact was made legally to appear. So, if any one be incompetent, it is equally void, because the proper number to constitute the grand inquest is wanting; and because he who is incompetent shall not be one of the triers of the offence at any stage of the prosecution. There seems, at some early stage of the proceeding by indictment, to have been some doubt whether the indictment was void because of the incompetency of one of the grand jurors, to set which at rest the 2 Henry IV, ch. 9, enacted 'that any indictment taken by a jury, one of whom is unqualified, shall be altogether void and of no effect.'" See also *Mann v. Fairlee*, 44 Vermont, 672; *State v. Williams*, 3 Stew. 454; *State v. Bryant*, 10 Yerger, 527; *State v. Cole*, 17 Wisconsin, 695; *State v. Brooks*, 9 Alabama, 9; *Jackson v. State*, 11 Texas, 261; *State v. Freeman*, 6 Blackf. 248; 1 Bishop Cr. Pro. § 883, and authorities cited; 1 Amer. Cr. Law, § 472,

and authorities cited; 1 Chitty's Cr. Law, 307; Bacon's Abridg. Indictment, C. Bouvier's ed. p. 53; 2 Hale, 155; 3 Inst. 34; 2 Hawk. c. 35, §§ 18, 26, 29 and 30.

We are of opinion that the objection here, that grand jurors were disqualified by the statute of Porto Rico, was made in the proper way and in due time. The accused was not in court when the grand jurors were selected and the grand jury empaneled. So far as appears from the record he was not aware that his case would be taken up by the grand jury. It does not appear he had, prior to the assembling of the grand jury, been arrested for the offences for which he was indicted. But upon the return of the indictment he was brought to the bar of the court and gave bond for his appearance and trial. His objection to the qualifications of the grand jurors was made promptly—three days after the indictment was returned—before he was arraigned and as soon as he learned of the facts upon which the objection was based. All this was admitted by the demurrer to the plea in abatement. If the objection in this case was not sufficient, then an objection made by plea in abatement prior to arraignment, that a majority or even all of the grand jurors returning an indictment against the accused were disqualified by law, would have been equally unavailing. Such a result is not to be thought of.

In this connection the Government calls attention to § 1025 of the Revised Statutes, providing that "No indictment found and presented by a grand jury in any District or Circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." This section can have no bearing in the present case, for the disqualification of a grand juror is prescribed by statute, and cannot be regarded as a mere defect or imperfection in form; it is matter of substance which cannot be disregarded without prejudice to an accused.

It is said that under the Spanish law prior to the cession

of Porto Rico indictments and grand juries were unknown; that it was allowable under the law to proceed against an accused by a criminal information; and that the Legislative Assembly of Porto Rico had not made any alteration of the Spanish law in this particular when the grand jurors in this case were summoned. The contention in this view is that the indictment in question, having been signed by the United States Attorney, can be treated as an information. The indictment embodies charges made by grand jurors, and the signature of the United States Attorney merely attests the action of the grand jury, whereas an information rests upon the responsibility of the attorney representing the Government, and imports an investigation of the facts by him in his official capacity. But, apart from these considerations, we cannot treat the indictment as an information, for the reason, if there were no other, that, as the defendant was accused of an infamous crime against the United States, this prosecution could not have been commenced in a Circuit Court of the United States except on presentment or indictment of a grand jury; and the positive command of the act of Congress relating to the District Court of the United States for Porto Rico, that the court below "shall proceed in the same manner as a Circuit Court" of the United States, precluded the prosecution of the accused in the latter court except by presentment or indictment.

We have seen that some of the grand jurors alleged in the plea of abatement to be disqualified were summoned prior to the date on which the local statute went into effect; and if the local statute were applied to them, they would have been held incompetent to act as jurors. But there is some ground to hold under section 800 of the Revised Statutes of the United States, that if they were qualified when summoned, then they did not become disqualified by reason of anything in the local statute which went into operation after they were summoned. By what law the qualifications of those particular jurors were to be tested we need not determine; for what has been said

as to disqualified jurors summoned after the court convened, and after the local statute went into operation and who were nevertheless permitted to participate in the finding of the indictment, is sufficient to dispose of the case.

For the reasons stated, and without considering other questions arising upon the plea in abatement as well as upon the record, we adjudge only that the presence on the grand jury of persons summoned after the local statute took effect and who were disqualified by that statute—those facts having been seasonably brought to the attention of the court by a plea in abatement filed before arraignment—vitiated the indictment.

*The judgment is reversed, and the case is remanded with directions to overrule the demurrer to the plea in abatement, and for such further proceedings as may be consistent with law.*

*Reversed.*

MR. JUSTICE MCKENNA concurs in result.

MR. JUSTICE WHITE dissents.