UNITED STATES v. HASKELL et al.

(District Court, E. D. Oklahoma. April 10, 1909.)

No. 284

1. INDICTMENT AND INFORMATION (§ 137*)—MOTION TO QUASH—REGULARITY OF PROCEEDINGS BEFORE GRAND JURY.

The mere introduction of incompetent testimony before a grand jury is not ground for quashing an indictment returned in the matter to which such evidence related.

[Ed. Note.—For other cases, see Indictment and Information, Dec. Dig. § 137.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. GRAND JURY (§ 34*)—MOTION TO QUASH INDICTMENT—REGULARITY OF PRO-
CEEDINGS BEFORE GRAND JURY.

An inadvertent misstatement of the law by a prosecuting officer to a
grand jury is not misconduct which will affect the validity of an indict-
ment found.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. § 73; Dec.
Dig. § 34.*]

3. GRAND JURY (§ 34*)—MOTION TO QUASH INDICTMENT—REGULARITY OF PRO-
CEEDINGS BEFORE GRAND JURY.

Under Act June 30, 1906, c. 3935, 34 Stat. 816 (U. S. Comp. St. Supp.
1907, p. 44), authorizing any attorney specially appointed and designated
by the Attorney General to conduct any legal proceeding which may be
conducted by a district attorney, it is competent for two or more such
attorneys to be present together in a grand jury room and to conduct the
proceedings making such division of the labor as they deem best, and the
fact that one acts only as a stenographer does not vitiate indictments
found.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. § 73; Dec. Dig.
§ 34.*]

4. GRAND JURY (§ 3*)—NUMBER OF JURORS—FEDERAL STATUTE.

Rev. St. § 808 (U. S. Comp. St. 1901, p. 626), relating to grand juries
and fixing the number, is expressly limited to the District and Circuit
Courts of the United States, and does not apply to any courts in the
territories.

[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 3.*]

5. GRAND JURY (§ 3*)—MOTION TO QUASH INDICTMENT—CONSTITUTION OF
GRAND JURY.

Prior to the admission of the state of Oklahoma the statutes of Arkan-
sas were in force therein by congressional enactment, including Mansf.
Dig. § 3991, which provides that a grand jury shall consist of 16 persons.
Prior to the extension of such statutes into the territory, the Supreme
Court of Arkansas had construed such section, and held that a grand
jury consisting of more than 16 was illegal, and an indictment returned
by it invalid. Held, that an indictment returned in the District Court
of the United States for the Eastern District of the State of Oklahoma
after its admission for an offense committed within the Indian Territory
before admission was invalid where it was found by a grand jury consist-
ing of 21 members since the change, although one of procedure was
one which substantially affected the rights of the accused to their dis-
advantage.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 3-6; Dec.
Dig. § 3;* Indictment and Information, Cent. Dig. § 481.]

6. INDICTMENT AND INFORMATION (§ 139*)—MOTION TO QUASH—TIME FOR MAK-
ING.

An objection to an indictment on the ground that the grand jury was
illegally constituted when substantial, and not merely technical, may be
taken at any time before arraignment.

[Ed. Note.—For other cases, see Indictment and Information, Cent.
Dig. § 473; Dec. Dig. § 139.*]

On Motion to Quash Indictment.

Sylvester R. Rush, Sp. Asst. Atty. Gen., Oliver E. Pagan, Sp. Asst.
Atty. Gen., and William J. Gregg, U. S. Atty.

Henry E. Asp, Chas. B. Stuart, A. C. Cruce, James H. Huckleberry,
and Thomas H. Owen, for defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

MARSHALL, District Judge. In the case of the United States v. Haskell et al. a motion has been interposed to quash the indictment, and by agreement of counsel, as I understand, this motion is also to be considered to apply to two other indictments found by the same grand jury at the same time and charging substantially the same offense. The grounds of the motion, so far as it is necessary to state them, are:

(1) Misconduct of the prosecuting officers of the government before the grand jury while the causes were being investigated by that body and before the finding of an indictment.

(2) The presence of an unauthorized person in the grand jury room during such investigation.

(3) The fact that the grand jury which returned the indictments consisted of 21 grand jurors instead of 16, the number claimed to have been prescribed by law at the date of the offenses charged.

These objections will be briefly considered in the order stated. So far as there is any evidence of the claimed misconduct of the prosecuting officers, it amounts to this: Certain secret service officers testified before the grand jury. Each of them produced affidavits of witnesses procured by him. Some of these were read by the witness producing them to the jury. Most of the affiants were subsequently called as witnesses and testified. In a few instances, however, the officer producing the affidavit stated that the witness by reason of sickness or infirmity could not attend, and these affidavits were read. Further, at the close of the first case, the attorney for the government, at the instance of the grand jury, stated the law claimed by him to be applicable to the crime being investigated, and, it is contended, stated it inaccurately in some particulars. The circumstances attending the investigation make it entirely probable that the affidavits read were incompetent, and not such evidence as would have been received in a court, but there is no showing that they were at all prejudicial to the defendants, and, indeed, no such showing could have been made within the limits of this investigation as prescribed by the court. But the question is whether the introduction of incompetent testimony is of itself such misconduct on the part of the counsel for the Government that the indictments must be quashed. If so, but few indictments would be immune to attack. So long as courts differ as to the competency of evidence, mistakes will be made, but on this motion the court is not sitting as a court of error to review the proceedings before the grand jury, and the mere introducing of incompetent testimony before that tribunal, which may well have been entirely harmless, is no reason for the quashing of the indictments. The authorities on this question are substantially uniform in the support of this conclusion. I am not satisfied that the attorney for the government in advising the grand jury as to the law pertinent to the investigation misstated it. It is not to be expected that any grand juror after the lapse of several months would be able to accurately repeat the propositions of law so stated with all of their qualifying phrases. But, if we are to assume an inadvertent error, this cannot be magnified into misconduct. The motions cannot be sustained on this ground.

2. The claimed unauthorized person whose presence in the grand jury room during the giving of testimony, it is claimed, vitiated the indictments, was an attorney appointed by the Attorney General of the United States as a special assistant district attorney for this investigation, and specially directed to assist therein. This attorney was also a stenographer, and the only function performed by him in the grand jury room was as a stenographer, and it was doubtless for the purpose of obtaining a transcript of the proceedings that he was appointed. It is claimed that, while an attorney so appointed and specifically directed may conduct grand jury proceedings by virtue of the provisions of Act June 30, 1906, c. 3935, 34 Stat. 816 (U. S. Comp. St. Supp. 1907, p. 44), he cannot be present for the only purpose of taking shorthand notes of the testimony. I think this is too narrow an interpretation of the statute. It is entirely competent for two or more of such attorneys to be present and to make such a division of the labor incident to the conducting of the proceedings as to them may seem best. The fact that one conducted the examination of the witnesses and the other stenographically reported the testimony did not infringe any rights of the defendants.

3. The third objection, going to the validity of the grand jury, is of more weight. The crimes charged are alleged to have been committed in the Indian Territory; that is to say, the several indictments are found under section 5440 of the Revised Statutes (U. S. Comp. St. 1901, p. 3676), and each charge a conspiracy continuing to the date of the indictment, but the last overt act alleged to affect the object of the conspiracy is of a date prior to the termination of the territorial government. The crime was then complete, and the defendants then became, if at all, liable to the penalty. At that time Congress had established United States courts in the Indian Territory, and had extended over and put in force there certain laws of the state of Arkansas, including section 3991 of Mansfield's Digest of the laws of Arkansas, which reads:

"A grand jury of sixteen persons shall be selected from those designated as grand jurors, but if any shall be absent, incompetent to serve, or excused, the deficit shall be made up by taking a sufficient number of competent alternates present in the order in which their names appear upon the list."

This was the only statute regulating the number of grand jurors in the constitution of a grand jury which was in force in the Indian Territory at the date of the alleged crimes, unless section 808 of the Revised Statutes (U. S. Comp. St. 1901, p. 626) of the United States was applicable therein, a matter to be presently considered. Before the statutes of the state of Arkansas had been extended over the Indian Territory, it had been the subject of construction by the Supreme Court of that state in the case of Harding v. State, 22 Ark. 210, and it was there held that no grand jury consisting of more than 16 persons complied with its provisions, and that an indictment returned by a grand jury of 17 persons must be quashed. This construction of the statute must be assumed to have been known to the Congress of the United States, and it accompanied the statute when extended. The indictments here in question were each found by a grand jury consisting of

21 persons. After the commission of the offense and before any prosecution therefor, the Indian Territory had, together with the Territory of Oklahoma, been admitted to the Union as the state of Oklahoma. United States Circuit and District Courts had been organized therein, and had been given jurisdiction of offenses theretofore committed in the respective territories so far as the same would have been within the jurisdiction of such courts if committed within a state. The indictments were thereafter found in the United States District Court for the Eastern District of Oklahoma, and it is claimed that the grand jury in question was legally constituted under the provisions of section 808 of the Revised Statutes of the United States. That section provides, among other things, that every grand jury impaneled before any District or Circuit Court shall consist of not less than 16 nor more than 23 persons. It becomes important then to consider whether that section of the statute was applicable to the United States courts of the Indian Territory when the offenses were committed; or, if not, the effect as to the defendants of the subsequent legislation which transferred jurisdiction of the offenses charged to the United States District Court of the Eastern District of Oklahoma.

Section 808 of the Revised Statutes was expressly limited to grand juries impaneled in a United States District or Circuit Court. The courts of the Indian Territory were courts of the United States, but not District or Circuit Courts of the United States within section 808. The dual jurisdiction exercised by the United States courts of the Indian Territory is besides the question. They did not fall within the description of the courts named in section 808, and that section had no application within any territory of the United States. This was settled by the Supreme Court of the United States in Reynolds v. United States, 98 U. S. 145, 25 L. Ed. 244, and needs no elaboration. But, when these indictments were found, section 808 of the Revised Statutes applied by reason of legislation which took effect after the commission of the offenses charged. It authorized a grand jury consisting of not less than 16 nor more than 23 persons, and the grand jury in question was within the maximum limit prescribed. Was the subsequent legislation which for the first time made this provision of the statutes applicable to the prosecution of the defendants ex post facto as to them, and forbidden by section 9 of article 1 of the Constitution of the United States, so far as it authorized a grand jury consisting of more than 16 persons? It is evident that the change was of importance to the defendants. Neither before nor after statehood could they be held to answer the crime charged unless on a presentment or indictment of a grand jury; but, if sought to be indicted before statehood, five dissenting grand jurors of the entire number could have precluded the finding of an indictment, while after statehood, and as the grand jury was in fact constituted, it required not less than ten dissenting jurors to have the same effect. That the situation was altered to the disadvantage of the defendants is apparent.

But it is argued that this is mere matter of procedure, and that one accused of crime has no vested right in being prosecuted in accordance with the methods of procedure in force at the date of the offense.

That must be granted as a general proposition; but it is so because a change of procedure ordinarily imposes no hardship on the accused, nor seriously alters his position to his disadvantage. In his Constitutional Limitations, p. 272, Judge Cooley says:

"The Legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it cannot lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime."

The following cases announce and illustrate the principle: Kring v. Mo., 107 U. S. 221, 2 Sup. Ct. 443, 27 L. Ed. 506; Duncan v. Mo., 152 U. S. 377, 14 Sup. Ct. 570, 38 L. Ed. 485; Thompson v. Utah, 170 U. S. 352, 18 Sup. Ct. 620, 42 L. Ed. 1061; Utah v. Rock, 20 Utah, 38, 57 Pac. 532. Here, though the change was one of procedure, I am of the opinion that a substantial protection designed by the law for the benefit of the accused was subsequent to the commission of the offenses if not dispensed with so impaired as to injuriously affect the rights of the accused, and alter the situation to their disadvantage, so that as to them it must be held to be ex post facto.

It is further contended in opposition to the motions to quash that the objection was made too late. The accused do not appear from the record to have been arrested for the offense charged prior to the finding of the indictment, nor to have had any notice that their cases would be examined by the grand jury. The indictments were returned February 3, 1909. The present motions were filed March 15, 1909, and before arraignment. That this was in time when the objection to the grand jury as constituted is substantial and not purely technical must be taken as settled by Carter v. Texas, 177 U. S. 442, 20 Sup. Ct. 687, 44 L. Ed. 839. In that case Carter, a negro, was indicted for murder at the November term of a criminal court of the state of Texas, the indictment being returned on November 26, 1897. At the March term, 1898, when the case was called for trial, but before his arraignment, the defendant presented a motion to quash the indictment on the ground that citizens of African descent had been wrongfully excluded from the grand jury because of their race and color. This motion was held by the Supreme Court to have been interposed in time, and the action of the trial court in denying it error. Many decisions of the state courts to the same effect are collated in Crowley v. United States, 194 U. S. 461, 24 Sup. Ct. 731, 48 L. Ed. 1075. In the case last cited, in reply to a suggestion that a defect in the constitution of a grand jury is a defect or imperfection in matter of form only, and hence cured by section 1025 of the Revised Statutes (U. S. Comp. St. 1901, p. 720), a position also taken in the cases at bar, it was said:

"That section can have no bearing in the present case, for the disqualification of a grand juror is prescribed by statute, and cannot be regarded as a mere defect or imperfection in form. It is matter of substance which cannot be disregarded without prejudice to an accused."

It follows that the indictments will be quashed, but as a grand jury can be empaneled in this court, consisting of 16 persons, and yet com-

plying with the requirements of section 808 of the Revised Statutes, the cases, if counsel for the government so desire, will be ordered to be submitted to another grand jury, and the defendants held to await the action of such grand jury.