## In re IMPANELING OF GRAND JURY TO EXAMINE INTO CONDITIONS AT CAMP SHANKS.

District Court, S. D. New York.

May 8, 1945.

John F. X. McGohey, U. S. Atty., and Edward G. O'Neill and Robert Roy Dann, Asst. U. S. Attys., both of New York City, for U. S.

MOSCOWITZ, District Judge.

The question has arisen as to whether or not the public should be present at the impaneling of a grand jury.

The Sixth Amendment to the Constitution provides that in all criminal prosecutions the accused shall enjoy a speedy and public trial. There is nothing in the Constitution, nor is there any statute which requires that the impaneling of a grand jury should be open to the public. The Sixth Amendment merely refers to a trial, which it states must be public. The courts have been zealous to protect the constitu-

tional guaranties of a defendant and to see to it that the accused is afforded this right of a public trial.

In a recent case, Tanksley v. United States, 9 Cir., 1944, 145 F.2d 58, 59, the court set aside a conviction of a defendant charged with rape on the ground that he was not afforded a public trial. The court uses the following apt language:

"One of the main purposes of the admission of the public is the reasonable possibility that persons unknown to the parties or their counsel, but having knowledge of the facts, may be drawn to the trial—for example, here where the defense is that the accusing witness is a woman who desires to be paid for her sexual intercourse. If such a woman, another man who had such paid intercourse might be in attendance. Realizing the danger to the defendant of the heavy penalty for the serious crime charged, he well might advise defendant's counsel of his experience with the accusing witness. Even without this his very presence in the courtroom might arouse in her a fear or sense of shame that would alter or weaken her testimony against the accused.

"This latter is the reason ascribed by Hale and Blackstone for the right of accused to the presence of the public at common law trials. Hale commends the system of giving evidence 'in the presence of the parties, counsel *and all bystanders*' (emphasis supplied) and later, contrasting the merits of such trial against the ecclesiastical trials upon deposition, states:

" 'Ninethly, the excellency of this *Open* course of evidence to the jury, in presence of the judge, jury, parties and counsel, and even of the adverse witnesses, appears in these particulars.

" '1st. That it is openly, and not in private before a commissioner or two, and a couple of clerks; where, oftentimes witnesses will deliver that which they will be ashamed to testify publickly.' [1]

"Blackstone follows in almost the same language.[2]

---

[1] "Sir Matthew Hale, History of the Common Law of England; ch. XII, Runnington's ed., pp. 343 and 345."

[2] "At page 372 of his tenth edition he states: 'And all this evidence is to be given in open court, in the presence of the parties, their attorneys, the counsel, and all by-standers.'

"And at page 373 he states: 'This open examination of witnesses viva voce, in the

presence of all mankind, is much more conducive to the clearing up of truth, than the private secret examination taken down in writing before an officer, in the ecclesiastical courts, and all others that have borrowed their practice from the civil law: where a witness may frequently depose that in private, which he will be ashamed to testify in a public and solemn tribunal.' "

"It is apparent that the defendant would not know of the excluded persons who would thus create in a witness the fear of the shame of public exposure of false testimony, a shame to be heightened by the fear of prosecution for perjury.

"Blackstone and Hale are among the accepted text books for the lawyers who were members of the constitutional convention. Whether or not that convention had in mind these particular portions of the writings of these two authorities, we recognize them as describing the reasons for the right to a public trial at the common law, which prevailed in the United States when the Constitution was framed."

From the days of the common law up to and including the present time an interested party has had the right to challenge the array or individual grand jurors. The prosecutor, too, has this privilege. Rule 6(b) (1) of the Rules of Criminal Procedure for the District Courts of the United States, which have been adopted by the Supreme Court of the United States pursuant to the Act of June 29, 1940 but are not yet in effect, permits the attorney for the government and a defendant who has been held to answer in the district court to challenge the array of jurors on the ground that the grand jury was not selected, drawn or summoned in accordance with the law and also to challenge an individual juror on the ground that the juror is not legally qualified. The requirement is that challenges shall be made before the administration of the oath to the jurors and shall be tried by the court. The pertinent language of Rule 6(b) (1) is "The attorney for the government or a defendant who has been held to answer in the district court may challenge the array of jurors on the ground that the grand jury was not selected, drawn or summoned in accordance with law, and may challenge an individual juror on the ground that the juror is not legally qualified. Challenges shall be made before the administration of the oath to the jurors and shall be tried by the court."

An interesting discussion of Rule 6 (b) (1) appears in the second preliminary draft of the Federal Rules of Criminal Procedure as follows: "Challenges to the array or to individual grand jurors were recognized at common law (Chitty, Criminal Law (5th Am. ed. 1847) 309), and although not expressly provided for by statute they

are available both to the prosecution and the accused in federal courts. See, e. g., 28 U.S.C. Sec. 419 [28 U.S.C.A. § 419] (Grand jurors; number when less than required number), Sec. 426 (Disqualification for service in prosecution for bigamy, polygamy, or unlawful cohabitation); see also Clawson v. United States, 1885, 114 U.S. 477 [5 S.Ct. 949, 29 L.Ed. 179]; United States v. Gale, 1883, 109 U.S. 65, 69–70 [3 S.Ct. 1, 27 L.Ed. 857]. Under the proposed rule only defendants who have been held to answer have the right to challenge the grand jury or grand jurors. Cf. United States v. Blodgett, D.C.S.D.Ga., 1867, Fed.Cas. No. 18,312. Compare also Agnew v. United States, 1897, 165 U.S. 36, 44 [17 S.Ct. 235, 41 L.Ed. 624]; Crowley v. United States, 1904, 194 U.S. 461, 469–474 [24 S.Ct. 731, 48 L.Ed. 1075]. As to the qualifications of jurors and method of selecting the grand jury which may furnish grounds for challenge see Note to Subdivision (a) supra. See also 28 U.S.C. Sec. 426 [28 U.S.C.A. § 426]. Compare United States v. Reed, C.C.N.D.N.Y., 1852, Fed.Cas. No. 16,134 (challenges to grand jurors are regulated by state law; opinion by Nelson, Circuit Justice); United States v. Eagan, C.C.E.D.Mo., 1887, 30 F. 608."

The discussion of Rule 6(b) (2) is also of great interest. It is stated:

"The right to object to irregularities in drawing or impaneling the grand jurors or to the lack of legal qualificatiion of grand jurors is not lost by lack of opportunity or by failure to challenge. Compare Subdivision (b) (1) supra. Provision is made in this subdivision for raising such objections after return of the indictment. This provision, together with Rule 12 (Pleadings and Motions before Trial; Defenses and Objections) supersedes 18 U.S.C. Sec. 556a [18 U.S.C.A. § 556a] (Indictments and presentments; objections to drawing or qualification of grand jury; time for filing; suspension of statute of limitations). See also Rule 47(d) (Time—For Motions; Affidavits) and Rule 49 (Motions). That statute limits the time for making objections of this type to 'before, or within 10 days after' the defendant is arraigned. These rules provide that such objections must be raised before trial. See Rule 12, infra. But the motion provided for in this subdivision may not in any event be made after trial. See United States v. Gale, supra; Turner v. United States, 5 Cir., 1895, 66 F. 280, 285.

"The second sentence follows 18 U.S.C. Sec. 554a [18 U.S.C.A. § 554a] (Indictments and presentments; objection on ground of unqualified juror barred where twelve qualified jurors concurred; record of number concurring)."

█ It seems to go without saying that it was always contemplated that the impaneling of a grand jury should be made in public. If the defendant or his attorney were not present, they could not very well "challenge an individual juror on the ground that the juror is not legally qualified" as provided by Rule 6. The impaneling of the jury has nothing to do with the secrecy of the proceedings and it would seem to be quite clear that it is contemplated by the new Rules and also by current practice that the actual impaneling of jurors should be in open court.

Perhaps there may be circumstances in which the ends of justice might be better promoted if the public were excluded from the impaneling of the grand jury—but they would have to be unusual in the extreme.[3] No such circumstances have ever been presented to this Court.

[3] This opinion is to supplement the determination made by this Court upon the impaneling of the grand jury on February 14, 1945.