## QUINONES v. UNITED STATES.
### No. 4208.

Circuit Court of Appeals, First Circuit.
March 18, 1947.

Writ of Certiorari Denied June 2, 1947.
See 67 S.Ct. 1513.

B. F. Sanchez Castano, of San Juan, P. R. (R. Martinez Alvarez, of San Juan, P. R., on the brief), for appellant.

Philip F. Herrick, U. S. Atty., of San Juan, P. R. (Francisco Ponsa Feliu and Pascual Amado Rivera, Asst. U. S. Attys., both of San Juan, P. R., on the brief), for appellee.

Before DOBIE (by special assignment), MAHONEY and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

The appellant was tried by jury, convicted, and sentenced to consecutive terms of imprisonment on two counts of an indictment drawn under § 2(e) of the Federal Firearms Act, 52 Stat. 1251, 15 U.S. C.A. § 902(e), charging him respectively with transporting a firearm and ammunition within the Territory of Puerto Rico at a time (May 15, 1943) when he was under indictment in an Insular Court for a crime of violence, to wit, murder in the first degree. There are three principal grounds for this appeal. These are (1) that the appellant's alleged transportation of a firearm and ammunition was not within the prohibition of the Federal Firearms Act for the reason that at the time thereof the appellant was not "under indictment" for the crime of violence alleged but had merely been charged with the commission of that crime by information filed in an Insular Court in accordance with Puerto Rican procedure; (2) that the petit jury selected to try the appellant was not legally constituted in that wage earners, negroes

and women had been systematically and intentionally excluded from the panel from which it was drawn; and (3) that the district court gave the jury erroneous instructions as to the meaning of the words "to * * * transport" as used in § 2(e) of the Act. We shall consider these contentions in the order enumerated.

The provisions of the Federal Firearms Act pertinent here are expressly made applicable to three categories of persons only. These are (1) persons who are "under indictment" for a crime of violence, as such crimes are defined; (2) persons who have been convicted of such a crime, and (3) fugitives from justice. There is nothing to indicate that the appellant belongs in either the second or third category. The question is whether he falls into the first. He says that he does not for the reason that "under indictment" as used in the Act must be construed to mean under a charge preferred by a grand jury and therefore the Act cannot be applied to him since he was only under a charge laid in an information filed by a prosecuting attorney. We do not agree.

■ The word "indictment" has two well recognized meanings. It is used in a broad general sense to indicate a charge of an offense by some undefined legal proceeding, and it is used in a narrow technical sense to indicate a written accusation of an offense presented in due form of law by a grand jury. Webster's New International Dictionary, Second Edition 1941; Bouvier's Law Dictionary, Rawle's Third Revision; Grin v. Shine, 187 U.S. 181, 192, 23 S.Ct. 98, 47 L.Ed. 130. The question is which of these meanings Congress intended the word to have in the Federal Firearms Act. We think Congress must have intended to use the word therein in its general rather than in its technical sense.

■ It is obvious as already pointed out that Congress did not intend the Act to apply indiscriminately to everyone. It saw fit to impose its prohibitions upon the receipt and transportation of firearms and ammunition only on persons who might logically be presumed because of their past conduct to have a predilection for the use

of arms and ammunition in the pursuit of a criminal career. And it saw fit to classify in this group, in addition to fugitives from justice, not only those who had actually been convicted of a crime of violence but also those, at least a certain class of those, who had legally been charged with having committed such a crime. With the object in mind of grouping the legally suspect and the proven guilty together in a class of potentially dangerous persons it seems hardly likely that Congress intended to differentiate between those legally suspect because under indictment by a grand jury and those legally suspect because an information had been filed against them by a prosecuting attorney. Instead it seems much more reasonable to assume that Congress intended to make inclusion in the interdicted class depend upon whether a charge of a crime of violence had formally been made rather than upon the precise method or technique by which such a charge when made comes before a court for trial.

Furthermore, the Act can never achieve its full scope in Puerto Rico, to which territory it clearly applies (Cases v. United States, 1 Cir., 131 F.2d 916, 923, certiorari denied sub nom Velazquez v. United States, 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718) unless the word "indictment" therein is construed to include an information, for the reason that grand juries have no place in Puerto Rican procedure, all charges of crime in the Insular Courts being by information filed by a prosecuting attorney only. Code of Criminal Procedure of Puerto Rico 1935 § 67. Hence if the technical meaning of "indictment" is adopted the Act can only apply in Puerto Rico to fugitives from justice and to persons who have actually been convicted of a crime of violence; it can never apply to persons legally charged with having committed such a crime. It seems hardly reasonable to suppose that Congress in the same breath exercised all the powers it had to control the receipt and transportation of firearms and ammunition in Puerto Rico (Cases v. United States, supra) and exempted in Puerto Rico one of the categories of the general class of persons to whom it obviously intended its Act to apply.

These considerations lead us to the conclusion that Congress must have intended the word "indictment" in the Federal Firearms Act to be construed as it was in Grin v. Shine, supra [187 U.S. 181, 23 S.Ct. 102], that is, "in the general sense of charged or accused by legal proceedings, and not in the technical sense of an indictment as here understood", i. e. in its sense "peculiar to Anglo-Saxon jurisprudence."

■ The appellant's contention that wage earners and negroes are "deliberately and systematically" excluded from the jury lists used in the District Court of the United States for Puerto Rico is not supported by any evidence in the record. On the contrary the evidence therein definitely indicates that no color line is drawn in selecting federal jurors in Puerto Rico, and that although few wage earners are selected for federal jury service, the reason is that few in that class have sufficient knowledge of the English language to meet the statutory requirement for such service. See 48 U.S.C.A. § 867. This lack of evidence is obviously fatal to the appellant's charge that wage earners and negroes are studiously excluded from federal juries in Puerto Rico. Glasser v. United States, 315 U.S. 60, 87, 62 S.Ct. 457, 86 L.Ed. 680.

■ It does appear, however, in fact it is conceded, that women are and always have been deliberately, purposefully and systematically omitted from the jury lists used in the court below. The question of the legality of this practice therefore arises.

In spite of the comment in Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 264, "that the two sexes are not fungible"; that "a community made up exclusively of one [sex] is different from a community composed of both" and that "the subtle interplay" of one sex upon the other "is among the imponderables", from which a fundamental right to have women available for jury service might possibly be inferred as a necessary consequence of the principle that jury panels should fairly represent the entire community, nevertheless it ap-

pears still to be assumed that there is no constitutional requirement that women be included among those called to serve on juries in the federal courts. Glasser v. United States, 315 U.S. 60, 65, 62 S.Ct. 457, 86 L.Ed. 680. See also both Mr. Justice Frankfurter's and Mr. Justice Burton's dissents in Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261. The question still appears to be whether Congress has seen fit to impose the burden of jury service upon them. We turn therefore to the applicable statute.

The provisions of the first Puerto Rican Organic Act, the Foraker Act of April 12, 1900, 31 Stat. 84, 85 as interpreted in Crowley v. United States, 194 U.S. 461, 467, 24 S.Ct. 731, 48 L.Ed. 1075, decided in 1904, required that the qualifications for jury service in the District Court of the United States for Puerto Rico be the same as the qualifications for jury service in the Insular Courts, and at that time Puerto Rican law provided, as it still does, that only persons of the male sex are competent to serve as jurors. Rev.Stats. & Codes of P.R.1902, p. 173; Code of Criminal Procedure of P.R. §§ 184-186.

This method of selecting jurors for service in the court below soon proved unsatisfactory,[1] however, with the result that Congress in 1906 enacted Chap. 3542, 34 Stat. 466 which so far as here material provided:

"That the qualifications of jurors as fixed by the local laws of Porto Rico shall not apply to jurors selected to serve in the district court of the United States for Porto Rico, but that the qualifications required of jurors in said court shall be that each shall be of the age of twenty-one years and not over sixty-five years, a resident of Porto Rico for not less than one year, and having a sufficient knowledge of the English language to enable him to duly serve as a juror."[2]

■ Obviously there is nothing in this statute explicitly requiring that women be listed for jury service in the District Court of the United States for Puerto Rico. Nor do we believe that its language leaves room for the supposition that Congress in passing the statute intended by inference to make women available for jury service in that court. The reason for this is that the first state to permit women to serve on its juries was Kansas and it did not do so until 1913, Laws 1913, c. 215, and we cannot believe that Congress would have pioneered in the movement to put women on juries without so expressing itself in unmistakable terms. It seems to us beyond question that if Congress in 1906 had meant to embark upon a radical experiment it would have said so. Furthermore, in the absence of definite language we cannot assume that Congress would require women on federal juries in a community where local law does not impose the burden of jury service upon them, and in addition in a community with a cultural and social background so different from our own. Much more might be said on the point but we see no need to labor it further. It is our conclusion that the applicable statute does not require the inclusion of women in the lists from which jurors are selected for service in the court below.

■ This brings us to the question raised with respect to the charge.

The appellant contends that there is evidence from which the jury could find that he did not carry a loaded revolver from one place to another on the day alleged in the indictment, but that on that day he merely stood in one place while he aimed and fired such a weapon. In consequence he contends that he was entitled to have

---

[1] Apparently the reason for dissatisfaction with this method of jury selection was that proceedings in the Insular Courts were conducted in Spanish and proceedings in the local United States court in English, and not enough persons with an adequate command of both languages who were otherwise qualified for jury service could readily be found. See Senate Report No. 3474, 59th Congress, 1st Sess., May 10, 1906, entitled "Qualifications of Jurors in Porto Rico"; House Report No. 4218, May 16, 1906.

[2] This statute has not subsequently been amended in any way pertinent to any question before us on this appeal. See 48 U.S.C.A. § 867.

the jury charged that a merely manual movement of a loaded firearm does not constitute transportation thereof, and of the ammunition in it, within the intendment of § 2(e) of the Federal Firearms Act.

The evidence hardly warrants the conclusion that all the appellant did at the time and place alleged in the indictment was to stand in one spot, aim and fire. On the evidence in the record it seems almost incredible that reasonable men could escape finding that beyond a reasonable doubt the appellant knowingly brought a loaded revolver to the scene of the affray testified to, or at the very least knowingly carried such a weapon away again afterward. However, if the evidence is capable of the interpretation placed upon it by the appellant the court below gave the jury appropriate instructions. It said:

"Now, Gentlemen of the Jury, what does it mean to transport something? I want to make that clear to you. When you say that a person shall not transport, that does not mean that he shall not carry it from San Juan to Caguas. It means, and the offense is complete, when he makes a forward movement moving the forbidden thing from one place to another. The transportation does not have reference to distance. It may be a short distance, it may be a considerable distance; but did he transport it, did he carry it, did he know that he was transporting it? Did he know it was in the truck, and he driving the truck? Maybe he didn't see it. If he knew it was there, then he was guilty. He could not be heard to say 'I didn't see the pistol', if he knew it was there. If the testimony indicates to you beyond a reasonable doubt that he did know it, then he is guilty as charged in this indictment. You must find under the second count of the indictment, however, if you find him guilty on the first, whether he transported the ammunition."

Then, in addition to the foregoing, the court recalled the jury a few minutes after it had retired and gave the following supplemental instruction:

"Mr. Foreman, and gentlemen, the district attorney thinks that I may have created a wrong impression by what I said about transportation. What I mean to say, and what I think I did say, was that it did not have any special reference to a matter of distance, but it would be moving, something unlawful, starting to its destination. It might be half way or all the way, but wherever there is a moving or carrying that is forbidden. You don't have to have a question of distance, but the mere waiving [sic] of something, or putting your hand on it, that would not enter into it."

It seems to us to go without saying that these instructions adequately cover the point with respect to the charge now made by counsel for the appellant. In fact, immediately after the supplemental instruction was given, it appears in the record that appellant's counsel expressed himself as satisfied with what had been said.

Other grounds suggested for this appeal have been considered and found too insubstantial to warrant discussion.

The judgment of the District Court is affirmed.