## UNITED STATES v. LEWIS.

### SAME v. GARDNER et al.

(District Court, E. D. Missouri, E. D.    December 8. 1911.)

Nos. 5,591, 5,623.

1. INDICTMENT AND INFORMATION (§ 9*)—SUFFICIENCY.

It is no objection to an indictment found in a federal District Court that the order for the grand jury was made for the District Court alone, and did not summon the jurors for service in both the District and Circuit Courts.

[Ed. Note.—For other cases, see Indictment and Information, Dec. Dig. § 9.*]

2. GRAND JURY (§ 8*)—FEDERAL COURTS—DRAWING OF JURORS—NECESSITY.

No. notice of the drawing of federal grand jurors need be given.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 16–20; Dec. Dig. § 8.*]

3. GRAND JURY (§ 7*)—FEDERAL COURTS—ORDER FOR JURY—REQUISITES.

An order for federal grand jury need not state for what time it is to serve.

[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 7.*]

4. CRIMINAL LAW (§ 304*)—JUDICIAL NOTICE—COURT RECORDS.

A federal District Court will take judicial notice of its records relative to the duties of its officers when it is claimed that they have failed to perform them.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 700; Dec. Dig. § 304.*]

5. GRAND JURY (§ 20*)—FEDERAL COURTS—ORGANIZATION OF JURY—REGULARITY.

Organization of a federal grand jury was not vitiated because the jurors were sworn and impaneled the day before the date fixed by the court for their appearance; it not being claimed that any of the jurors were incompetent or disqualified or that accused were prejudiced.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 56–58; Dec. Dig. § 20.*]

6. INDICTMENT AND INFORMATION (§ 9*)—NOTICE OF GRAND JURY INVESTIGATION—NECESSITY.

An indictment is not bad because accused were not under bond before the indictment was found and had no notice of any investigation being made as to them until after the indictment was found.

[Ed. Note.—For other cases, see Indictment and Information, Dec. Dig. § 9.*]

7. CRIMINAL LAW (§ 301*)—PLEAS—WITHDRAWAL—JUDICIAL DISCRETION.

It was within the trial court's sound discretion to permit accused to withdraw their pleas of not guilty and file motions to quash.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 687; Dec. Dig. § 301.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. INDICTMENT AND INFORMATION (§ 139*)—MOTION TO QUASH—TIME FOR FILING.

Where accused gave bond for his appearance, the day after indictment was returned against him and appeared on the return day ready to file a motion to quash, but the presiding judge, deeming himself disqualified, would not permit the motion to be filed or accept a plea, but it was agreed that the motion might be filed without leave, which would be obtained subsequently when another judge should preside, and where leave by the judge who was subsequently called in was granted, the motion must be deemed to have been filed in time.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 473; Dec. Dig. § 139.*]

9. CRIMINAL LAW (§ 1186*)—PREJUDICIAL ERROR—SELECTION OF GRAND JURY.

The selection of a grand jury is a matter of substance which cannot be disregarded without prejudice to accused, not being a mere defect in form which Rev. St. § 1025 (U. S. Comp. St. 1901, p. 720), requires to be disregarded; and hence an indictment was vitiated by an order for the drawing of 36 names for the formation of a grand jury which permitted the marshal to summon 23 persons to be selected by him from the 36 drawn, in violation of Act Cong. June 30, 1879, c. 52, 21 Stat. 43.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1186.*]

10. STATUTES (§ 184*)—CONSTRUCTION.

Though a statute be unambiguous, a court, to effectuate the legislative intent can ascertain the mischief sought to be remedied.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 262; Dec. Dig. § 184.*]

Prosecutions against Edward G. Lewis and against H. B. Gardner and others. On plea in abatement to the indictments. Pleas sustained.

Charles A. Houts, U. S. Atty.
Barclay, Fauntleroy & Cullen, for defendants in No. 5,591.
Chester H. Krum and Arthur N. Sager, for defendants in No. 5,623.

TRIEBER, District Judge. The defendants filed a plea in abatement to quash the indictments in these cases upon the following grounds:

"(1) The order for the selection and drawing of the said grand jurors for the May term, A. D. 1911, was illegal, first, because it required the clerk and jury commissioner of this court to draw the names of thirty-six (36) persons from the division of the district, a number in excess of the maximum number authorized and required by law for a grand jury; and, second, because said order provided that a venire be issued commanding the marshal of the United States for the Eastern District of Missouri to summon twenty-three (23) persons of the thirty-six (36) ordered to be selected and drawn, which order thus illegally conferred upon the said marshal the arbitrary power and authority of making his personal selection from the thirty-six (36) names drawn and selected, of the twenty-three (23) persons who would be impaneled, sworn and charged as a grand jury for the United States of America for the May term, A. D. 1911, of this court. Defendant states that pursuant to said order, the names of thirty-six (36) persons were selected and drawn by the clerk of this court and the jury commissioner, and that a venire, under the seal of the court, was issued commanding the said marshal to summon twenty-three (23) of the thirty-six (36) persons whose names had been drawn and selected as aforesaid, and that the said marshal, illegally and in violation of the constitutional and legal rights and immunities of defendant, arbitrarily selected twenty-four (24) persons from the thirty-six

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(36) whose names had been drawn and selected, as aforesaid, and thus wrongfully and illegally and to the prejudice of defendant exercised his own discretion in the selection of the persons, who were to be, and were thereafter, impaneled, sworn and charged, to inquire into the matters and things charged in the indictment herein as offenses against the laws of the United States of America, and who did, as the grand jury of the United States of America, in and for the Eastern Division of the Eastern Judicial District of Missouri, for the May term, A. D. 1911, of this court, return against defendant, the indictment herein.

"(2) The said grand jurors were illegally impaneled, sworn and charged on the 6th day of July, 1911, when the court had by its order for the drawing and selection of said jurors provided that the marshal summon twenty-three (23) of the persons drawn to appear at and before this court on the 7th day of July, 1911, to serve as grand jurors at the May term, 1911, of this court so that the said jurors appeared in court and were impaneled, sworn and charged one day prior to the time provided by the order of court for them to appear and serve as grand jurors.

"(3) The order for the grand jury, by which said indictment was presented, was illegal and void, inasmuch as it was made for the District Court alone at and for a time when a term of the Circuit Court for the same division was being held, and thereby said order was contrary to the statute on that subject.

"(4) The grand jury by whom said indictment purports to have been found was not legally selected and drawn in the manner required by the federal statutes on this subject, and in that the lists therefor were not made up from all the different parts of the division of the district in which this court sits.

"(5) That the said jurors were not of the body of the Eastern Division of the Eastern District of Missouri.

"(6) That no notice of said drawing was given, and therefore said drawing was illegal.

"(7) That the drawing of said grand jurors was not regular, but illegal in that said jurors were not returned from different parts of this division of the Eastern District of Missouri under any order of this court apportioning the number thereof to different parts of said district.

"(8) That the order for said grand jury is insufficient in omitting to state for what time or period said jury was to serve, and therefore fails to conform to the act of Congress of March 28, 1911.

"(9) That said venire is irregular and void because the same does not summon said jurors for service in both District and Circuit Courts as required by law.

"This defendant was not under bond to appear to answer to any indictment which might have been found, and was not required to so appear, and defendant had no notice or knowledge of any investigation being made as to him by any grand jury called or to be called in said court and no knowledge whatever of any investigation being made as to him until after the indictment was found and returned into court."

The government filed a demurrer to these pleas and thus raised the question of their sufficiency.

[1-3] The third, sixth, eighth and ninth grounds require but little consideration, as the laws do not require the performance of any of the acts which it is alleged in these pleas were omitted. The grand jury was summoned for the District Court, and the indictments returned to that court. For this reason it is wholly immaterial and unnecessary to determine whether under this order the grand jury could have legally returned an indictment to the Circuit Court. This disposes of the third and ninth grounds.

Nor is there any statute requiring that notice of the drawing of jurors shall be given. To whom would such notice have to be given?

It frequently happens that parties are indicted by the grand jury for offenses·committed after the impaneling of the jury. In other cases evidence may be brought before, the grand jury to show the commission·of an offense of which the officials of the government knew nothing until the witnesses testified before the grand jury.

. Nor is there any statute requiring the order for the grand jury to state for what time or period it is to serve. How can the court know how long it will take the grand jury to dispose of its business; whether they will work rapidly or slowly; whether there will be few or many cases submitted to them for action? Many other contingencies may arise which may affect the length of time they will remain in session which could not possibly be foreseen when the order for the grand jury, which may be made under the statute several months before the jury is drawn, is made. It would be a strange requirement and Congress did not see proper to prescribe it. This disposes of the sixth and eighth grounds.

·[4] The fifth and seventh grounds are contradicted by the records of the court which show that the commissioners were to draw the jurors from all the counties of the division of the district, and the venire for the jury, which gave not only the names of the jurors drawn, but the residence and county of each, shows that they were drawn from the entire division of the district. The court will take judicial notice of its records relative to the duties of its officers when it is claimed that the officers failed to perform them. United States v. Terry (D. C.) 39 Fed. 364; United States v. Greene (D. C.) 113 Fed. 683, affirmed in 154 Fed. 401, 85 C. C. A. 251.

[5] The second ground alleges that the grand jurors were sworn and impaneled on the 6th day of July, 1911, when the court had by its order directed that they appear on the 7th day of July, 1911. It is not alleged or claimed that any of the jurors were incompetent or did not possess the qualifications prescribed by law, nor is it shown that the defendants were in any wise prejudiced by this. The court cannot conceive of anything whereby they could have been prejudiced by that fact. It was evidently a misprision of the clerk and can in no wise affect the legality of the grand jury.

[6] Defendants in their plea specifically allege that they were not under bond to appear or answer any indictment which might be found against them, and were not required to appear in court at any time before the finding of the indictment, and had no notice or knowledge whatever of any investigation being made as to them until after the indictment was found and returned into court. This is clearly within the letter and spirit of section 1025, Rev. Stat. (U. S. Comp. St. 1901, p. 720); Wolfsohn v. United States, 101 Fed. 430, 41 C. C. A. 422; Stockslager v. United States, 116 Fed. 590, 54 C. C. A. 46; United States v. Ewan (C. C.) 40 Fed. 451.

·[7] This leaves for the sole consideration of the court the sufficiency of the first ground set up in the motion.

It appears that the order of the court, and the venire to the marshal followed the exact language of the order of the court, directed the commissioners to draw the names of 36 persons, and that a venire

be issued commanding the marshal to summon 23 persons of the 36 thus drawn. It is not claimed by counsel for the government that the statute authorizes such a discretion to be exercised by the marshal, but it was earnestly argued that such an order does not vitiate the action of the grand jury thus selected for two reasons: First, that the delay of two or three weeks on the part of the defendants in the Gardner Case and the delay of four months in the Lewis Case is a waiver of the irregularity; and, second, that there is no showing in the motion that the defendants were in any wise prejudiced thereby.

As to the first objection, the facts are that within a few days after the defendants in the Gardner Case had been arrested they were arraigned and entered pleas of not guilty. Within a few days thereafter they were granted leave by the court to withdraw their pleas of not guilty and file their motions to quash. As it was discretionary with the court to permit a withdrawal of pleas for the purpose of filing motions to quash, it is too late now to question the right to do so. It is not claimed, and cannot reasonably be claimed, that the action of the court was such an abuse of discretion as to justify even an appellate tribunal to set it aside, and certainly would not justify another judge who happens to sit in the cases to disregard or even question it.

[8] In the Lewis Case the defendant was indicted in July, and a capias issued returnable in November. He gave bond for his appearance the day after the indictment had been returned and on the return day appeared in court ready to file this motion. The presiding judge declaring that he was disqualified in the case, would not grant leave to file the motion or accept a plea, but after consultation with counsel for the defendant, it was agreed that he might file any motion he desired without leave of the court obtained at that time, but to be obtained at a later day when another judge would preside. Thereupon the motion to quash was filed without special leave of the court and when the writer of this opinion presided over the court leave was granted. In view of these facts the court is of the opinion that all the motions to quash were filed within proper time. Carter v. Texas, 177 U. S. 442, 20 Sup. Ct. 687, 44 L. Ed. 839; United States v. Haskell (D. C.) 169 Fed. 449. Whether that would be the case if the defendants had been under bond to await the action of the grand jury or had been notified by the authorities acting for the government that charges against them would be submitted to the grand jury impaneled for the 6th of July is not before the court, and therefore cannot be determined in these cases.

[9] Treating the motion as filed in proper time the next question is whether the order of the court and venire for the grand jury are merely defective in form and not a matter of substance tending to prejudice the defendants and therefore within the meaning of section 1025, Rev. Stat., which provides:

"No indictment found and presented by a grand jury in any district or circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceedings thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

The selection of a grand jury by the officers who by law are the only ones invested with that power, is not a mere defect or imperfection in form. It is a matter of substance which cannot be disregarded without prejudice to an accused. Hopt v. Utah, 110 U. S. 574, 4 Sup. Ct. 202, 28 L. Ed. 262; Crowley v. United States, 194 U. S. 461, 474, 24 Sup. Ct. 731, 48 L. Ed. 1075; United States v. Gale, 109 U. S. 65, 71, 3 Sup. Ct. 1, 27 L. Ed. 857; Renigar v. United States, 172 Fed. 646, 97 C. C. A. 172, 26 L. R. A. (N. S.) 683; State v. Cantrell, 21 Ark. 127.

In Hopt v. Utah, Mr. Justice Harlan speaking for the court said:

"That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his mere failure when on trial and in custody to object to unauthorized methods. The great end of punishment is not the expiation or atonement of the offense committed, but the prevention of future offenses of the same kind. 4 Blackstone, Comm. 11."

In State v. Cantrell the law required the sheriff to summon the persons selected by the county court to serve as grand jurors. The venire directed him to summon 16 persons named therein. He failed to summon one of the persons selected by the county court, and named in the venire and without an order of the county court or circuit court summoned another person, who acted as a member of the grand jury by whom the indictment was returned. A plea in abatement was filed to quash the indictment upon that ground. The statute made it the duty of the county court, at its first term after the adjournment of the circuit court to make out and cause to be delivered to the sheriff a list of 16 persons qualified to serve as grand jurors, and the sheriff is required, within 20 days thereafter, to summon them to appear at the next term of the circuit court of the county. The statute further provided:

"If the sixteen persons summoned to serve as grand jurors shall not attend on the first day of the circuit court, such court shall order the sheriff, forthwith, to summon a sufficient number of persons qualified to serve as grand jurors to supply the deficiency."

In sustaining the plea the court said:

"The design of the statute, in prescribing the mode in which grand jurors shall be selected, was to protect the citizen from unfounded prosecution, and to deprive the sheriff, if inclined, of the opportunity of acting corruptly. Any essential departure from its provisions, the law does not wink at, however slight."

Mr. Justice Bradley in delivering the unanimous opinion of the court in the Gale Case, after deciding that the pleas set up in that case were not matters of substance, said:

"There are cases, undoubtedly, which admit of a different consideration and in which the objections to the grand jury may be taken at any time. These are where the whole proceeding of forming the panel is void; as where the jury is not a jury of the court or term in which the indictment is found; or have been selected by persons having no authority whatever to select them."

It is true this was obiter, and not necessary to be determined by the court in that case, but considering the high authority of the court

and the great learning of the Justice who delivered the opinion, it is entitled to careful consideration.

[10] The act of June 30, 1879, 21 Stat. 43, providing for the selection of jurors, grand and petit, in the courts of the United States made a great change in the law then in force. While the language of that act is clear and free from ambiguity, and for this reason there is nothing to construe, still, to carry out the true meaning and intent of the Congress which enacted it and to understand what that intent was, it is proper to ascertain the mischief supposed to prevail at that time and which it was sought to remedy by the enactment of that statute. United States v. Union Pacific Ry. Co., 91 U. S. 72, 23 L. Ed. 224; United States v. Saunders, 120 U. S. 126, 7 Sup. Ct. 467, 30 L. Ed. 594; Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226; United States v. Eaton, 169 U. S. 342, 18 Sup. Ct. 374, 42 L. Ed. 767; United States v. Ninety-Nine Diamonds, 139 Fed. 961, 72 C. C. A. 9, 2 L. R. A. (N. S.) 185; Stevens v. Nave-McCord Merc. Co., 150 Fed. 71, 80 C. C. A. 25.

The act of July 20, 1840, 5 Stat. 394, and the various amendments thereto, as finally compiled and re-enacted by Congress when it adopted the Revised Statutes of 1873, § 800, provided that:

"Jurors to serve in the courts of the United States in each state respectively shall have the same qualifications, subject to the provisions hereinafter contained, and be entitled to the same exemptions as jurors of the highest court of law in such state may have and be entitled to at the time when such jurors for service in the courts of the United States are summoned; and they shall be designated by ballot, lot or otherwise according to the mode of forming such juries then practiced in such state court so far as such mode may be practicable by the courts of the United States or the officers thereof. And for this purpose the said courts may, by rule or order, conform the designation and impaneling of juries, in substance, to the laws and usages relating to jurors in the state courts, from time to time in force in such state. This section shall not apply to juries to serve in the courts of the United States in Pennsylvania."

In many of the districts where it was found inconvenient or in fact impossible to conform to the mode of practice prevailing in the state courts, the juries being selected by county supervisors or county courts for each county and no jury boxes used, the usual rule of the court was to direct the marshal to select the juries either from the entire body of the district or such parts of it as the court designated in the order for the venire. It was claimed that in many instances the marshal abused that power by selecting partisans as jurors, grand and petit, especially in the South, when prosecutions for violations of the statutes enacted immediately after the Civil War for the protection of the negroes and the franchise were frequently instituted in the national courts. To remedy this the act of 1879 was enacted, and to insure its passage by the Senate, it was attached as section 2 to the appropriation act for judicial expenses. That one of the main objects of the bill as shown by the language used was to deprive the marshal of the power to select jurors is too clear to require any extended argument. The act provides:

"That all such jurors, grand and petit, *including those summoned during the session of the court, shall be publicly drawn from a box,*" etc.

And farther on it provides:

"And all juries to serve in courts after the passage of this act shall be drawn in conformity herewith."

The act of March 3, 1865, 13 Stat. 500, re-enacted as section 808, Rev. Stat. (U. S. Comp. St. 1901, p. 626), provides:

"Every grand jury impaneled before any district or circuit court shall consist of not less than sixteen nor more than twenty-three persons. If of the persons summoned less than sixteen attend, they shall be placed on the grand jury, and the court shall order the marshal to summon, either immediately or for a day fixed, from the body of the district, and not from the bystanders, a sufficient number of persons to complete the grand jury. And whenever a challenge to a grand juror is allowed, and there are not in attendance other jurors sufficient to complete the grand jury, the court shall make a like order to the marshal to summon a sufficient number of persons for that purpose."

And this has been construed not to authorize the court to order the marshal to summon or select other persons than those drawn by the commissioners to complete the grand jury except in the event that less than 16 attended under the first venire. In the course of its opinion the court said:

"Undoubtedly the court has the right to determine of how many persons, up to 23, the grand jury shall consist; but if more than 16, and less than the number ordered, attend under the first venire, and the court sees fit to require an additional number to make up the full panel as first ordered, the deficiency should, in my opinion, be supplied by ordering additional names to be drawn from the wheel, and not by directing the marshal to select the additional jurors from the body of the district, or from particular localities in the district." United States v. Eagan (C. C.) 30 Fed. 608, 611.

What is the effect of the order of the court and the venire for the grand jury which returned these indictments? It directs 36 grand jurors to be drawn, but only 23 of them are to be summoned by the marshal. Which 23 of the 36 drawn are to be summoned is left entirely to the discretion of the marshal, and while it is not claimed that the marshal abused this power or that he did not select the first 23 on the list, still under the order of the court and the venire he was authorized to exercise his own judgment as to what 23 jurors of the 36 drawn by the commissioners were to be summoned to serve as grand jurors, and thus given an opportunity to do the very acts, if so inclined, which Congress by the act of 1879 sought to prevent. If such power is permissible under the law, then the court, if it should deem it necessary, may order the commissioners to draw 50 names to insure a full panel for the grand jury, and authorize the marshal to select 23 out of these 50 names. A jury thus selected is not a legal body within the meaning of the law, and, in the language of Mr. Justice Harlan in Crowley v. United States, supra, such action "cannot be regarded as a mere defect or imperfection in form; it is a matter of substance which cannot be disregarded without prejudice to an accused."

In the opinion of the court the motion to quash upon the first ground set up must be sustained. The court realizes fully the far-reaching

effect this decision may have on other indictments returned by this and former grand juries summoned on similar venires, but fortunately the decision is one which may be reviewed by the Supreme Court of the United States, and if erroneous corrected, or new indictments may be obtained from the next grand jury if the evidence justifies it, and the offenses are not barred by the statute of limitations.