[No. 2093]

F. B. McCOMB, Petitioner, v. FOURTH JUDICIAL
DISTRICT COURT OF THE STATE OF NEVADA
IN AND FOR THE COUNTY OF ELKO, and
HON. E. J. L. TABER, Respondent.

1. Grand Jury — Objections to Jurors — Waiver — Untimely
   Objection.
       Under Rev. Laws, sec. 7005, permitting an individual grand
   juror to be challenged on the ground that he is an alien, and
   section 7010 providing that an accused can take advantage of
   any objection to the panel or to an individual grand juror "in
   no other mode than by challenge," an accused waived his right
   to object that one of the jurors was a resident of another
   state by waiting until time for pleading to the indictment,
   more than two weeks after the impaneling of the grand jury,
   when opportunity was given his counsel to challenge, though
   accused was not then present.

2. Grand Jury — Objections—Time of Making—Knowledge of
   Law.
       One held to answer to the grand jury was bound to know
   the provisions of the code relating to the time challenges must
   be interposed to the grand jury.

3. Criminal Law—Appeal—Harmless Error.
       Since the state could have prosecuted the offense of horse
   stealing by information, special injury will not result to
   accused by trying him upon an indictment, though one of the
   grand jurors who found it was a nonresident.

4. Prohibition—Purpose of Writ.
       Under Rev. Laws, sec. 5708, which provides that the writ of
   prohibition arrests the proceedings of any tribunal which are
   without or in excess of its jurisdiction, the writ will only
   issue where there is an exercise of functions without or in
   excess of the jurisdiction of the prohibited tribunal.

McCarran, J., dissenting.

APPLICATION for writ of prohibition by F. B. McComb
against the Fourth Judicial District Court of the State
of Nevada in and for the county of Elko and Hon. E. J.
L. Taber, Judge. **Application denied.**

The facts sufficiently appear in the opinion.

*R. C. Van Fleet, A. J. Weber,* and *James Dysart,* for
Petitioner.

*Geo. B. Thatcher,* Attorney-General, *E. P. Carville,*
District Attorney of Elko County, *Curler & Gedney,* and
*Henderson & Caine,* for Respondents.

By the Court, TALBOT, C. J.:

This is an application for a writ of prohibition to enjoin the Fourth judicial district court, Elko County, and the Honorable E. J. L. Taber, presiding judge thereof, from trying F. B. McComb because one of the grand jurors was a resident of the State of Wyoming at the time of the finding of the indictment against him for grand larceny.

Under a criminal complaint charging horse stealing, and after hearing and taking of testimony continuing from the 26th to the 30th day of August, 1913, Phil S. Triplett, justice of the peace for Wells township, on the 24th day of September ordered the applicant held to answer and admitted to bail. On September 23, 1913, a grand jury was drawn, returnable October 8. Upon the impaneling of the grand jury on that day, in the absence of McComb and in the presence of his attorney, the court asked if there were any challenges to the panel or to any individual juror, and, no challenge being interposed, the accused persons who were in the custody of the sheriff and who had been brought into court were remanded to jail. On the following day the grand jury returned an indictment for grand larceny against the applicant and the arraignment was set for October 10.

At the time of the arraignment a copy of the indictment was handed to him, and he was asked whether he pleaded guilty or not guilty, and on motion of his attorney the court ordered that he be given until October 16 in which to plead to the indictment. On that day he presented affidavits indicating that one of the members of the grand jury that found the indictment was a state senator in Wyoming, and that, although he had been in Nevada much of the time for the past two years, he had declined to register here as an elector and retained his residence in Wyoming. Thereupon the defendant moved the court to set aside the indictment because it was not found by a grand jury of seventeen men having the qualifications of grand jurors under the statute of this state, and because the court was without jurisdiction to proceed with the trial. The motion was resisted upon the ground that the

reasons advanced for setting aside the indictment had been waived by the defendant.

The constitution gives the district court jurisdiction over all felonies. Horse stealing having been made grand larceny by an act of the legislature, the trial of persons accused of that offense comes within the jurisdiction of the district court and no other. Persons charged with the commission of felonies are entitled to be tried by an indictment found by a grand jury consisting of duly qualified electors resident in the county, who are citizens of the United States and have been in the state six months, except that prosecutions may be had upon information under the late amendment to our constitution, which now conforms to the provisions in other states for prosecution by information.

Is this right of the accused to be indicted by a legal grand jury, as well as other constitutional rights, such as that of having counsel, being present at the trial, being confronted by the witnesses, and having witnesses produced in his behalf, one so vital to the jurisdiction of the court that it may not be waived or regulated by act of the legislature? It may be conceded that neither by statute nor by judicial decision can an accused person be deprived of his right to be indicted by a regularly constituted grand jury, unless charged by information, before being tried for a felony. But may not the legislature, and in the absence of statutory regulation the courts, require that challenges to a grand jury be seasonably made, so that undue delay and unnecessary expense may be avoided in the administration of justice?

If the constitutional right of an accused person to be indicted by a grand jury composed of the requisite number of qualified resident electors is a jurisdictional one which he cannot waive, logically he might raise the objection any time after conviction and appeal and before full service of sentence. The rights of persons who are so unfortunate as to be charged with crime should be carefully guarded, but not to the extent of allowing them to cause unnecessary delay and useless expense. They cannot be deprived of their constitutional rights by the

legislature or the courts, but should be limited to a reasonable time in which to interpose challenges or make objections.

It is not strange that the decisions relating to the time at which an objection may be made or a challenge interposed or waived are not uniform in various jurisdictions without legislative enactment. Some have held that the right of challenge is waived by pleading to the indictment or by going to trial, and in rare instances that the objection to the grand jury may be made after trial and upon appeal. If in the absence of statutory regulation the courts may determine the time within which the challenge must be made, the matter may be regulated by statute, and the legislature may provide that, if the challenge is not interposed within a reasonable time, it shall be waived, as has been done in this state, so long as the accused is not deprived of a fair opportunity to interpose a challenge. To allow the objection to be made after trial might necessitate the calling of a new grand jury and trial jury and the recalling of the witnesses, officers, and persons engaged in the trial. To allow the objection to be made after the indictment, as is sought to be done in this case, may necessitate the calling of a new grand jury. This is necessary only in cases where the accused has been indicted without being previously held to answer and where he could be given no opportunity to challenge the grand jury until after the indictment was returned, and the code has provided accordingly. (Rev. Laws, 7090.)

1. There is no good reason why an accused person should be allowed to wait until after an appeal or after a trial and the chance of securing a favorable verdict to challenge the grand jury, nor why the legislature may not provide that such challenges must be exercised earlier if a reasonable opportunity is given to interpose his objection to being deprived of his constitutional right or of being put on trial unless indicted by a legal grand jury. No one has any vested right in the common law, except in so far as it is carried into the constitution. By legislative enactment it is in force in this state when not in conflict with the constitution or statutes. As the decisions

constituting the common law regarding the time and method for taking objections to grand juries are conflicting, our legislature has wisely provided that a person who has been held to answer by a committing magistrate may by challenge interpose his objection to the grand jury at the time it is impaneled, and in no other mode. (Rev. Laws, 7004, 7005, 7010.)

No good reason is apparent for holding that this statute may not control such a matter of practice. This is evidently intended to give the accused person an opportunity, with fair diligence, to timely assert his constitutional rights and prevents the delay in the administration of justice and the useless expense which might be incurred if the challenges were allowed to be interposed after trial or after the grand jury has been impaneled, acted upon the case, and returned an indictment. The grand jury was drawn two weeks in advance, and it is not shown that with reasonable diligence or effort the accused could not have ascertained regarding the disqualification of grand jurors and interposed his challenges at the proper time. His absence while on bail when the grand jury was impaneled is no fault of the state.

2. He was bound to know the specific provisions of the code, that challenges may be interposed at the time the grand jury is impaneled, and that objections to the grand jury or a member thereof can be made in no other mode. He was required to be present at all the proceedings in which he was interested, and he was as much bound to appear and interpose the challenges, or have his attorney do so, at the time the court asked if any were to be made, as persons who were brought into court by the sheriff for the purpose of giving them an opportunity to interpose challenges. At section 112, vol. 1, Bishop's New Criminal Procedure (2d ed.), that reliable author states: "Since accused persons may waive constitutional rights, they may doubtless, under some circumstances, waive the protection of this provision. They cannot when the effect would be to create a jurisdiction which the court did not otherwise possess, as to try one wholly without accusation. But formal objections

may by statute be required to be taken at an early stage of the proceeding, in the absence whereof they will be treated as waived."

At section 996, 997, Bishop's New Criminal Law, it is said: "It is a doctrine to which there are few exceptions that a party in a cause may waive any right which the law has given him, even a constitutional one. The courts will refuse to hear objections to the persons composing the grand jury, or to the manner in which it is impaneled, after the case has been tried by the petit jury, or, indeed, after proceedings earlier than the trial."

In volume 10, Ency. Pl. & Pr., at pages 355, 404, 406, it is said: "The incompetency of one grand juror is sufficient to render the body illegal and findings by it void. This rule is subject, however, to the requirements in the various states in respect of the time and manner of raising such an objection. But the manner of raising various objections is not the same in all jurisdictions, and the extent of the foregoing rule as to waiver is more or less dependent upon local practice. On the other hand, when the defendant is held to answer, he is entitled to challenge, and his right cannot be denied him unless he waives it; but the challenge being, under such circumstances, his only remedy in many states, he must take advantage of his privilege in proper time or his right will be waived, even if, at the time of his privilege, he did not know of the existence of the objections."

It is said in 24 Cyc. p. 129, that "alienage is a disqualification to act as a juror and was such at common law, and one which the parties may waive."

Bierly, in his work on Juries and Jury Trials, at page 85, states that after arraignment and plea it is too late to challenge, indicating that in his opinion such objection does not go to the jurisdiction so as to vitiate subsequent proceedings. The conclusion is that any error in this regard cannot be corrected by special writ.

In *Commonwealth* v. *Freeman*, 166 Pa. 332, 31 Atl. 115, it was held that a motion to quash the panel after four jurymen had been selected and sworn came too late.

In *Commonwealth* v. *Penrose*, 27 Pa. Super. Ct. 111, 112, it was said in the opinion: "The disqualification of the juror was a purely legal one which did not at all tend to impeach his capacity, integrity, or impartiality. It would have been disclosed, if he had been interrogated at the time he was sworn, but the defendant voluntarily omitted to avail himself of the means at his hand for informing himself and the court upon the subject. He preferred, perhaps, to hold them in reserve to be used in the event of an adverse verdict, as he had a perfect right to do, if the position of his counsel is correct. We think, however, that their position is not tenable. In *Hollingsworth* v. *Duane*, 4 Dall. 353, 1 L. Ed. 864, as the report of the case goes, 'the court after a long advisement upon the subject seemed to think that alienage might have been a cause of challenge before the juror was sworn; but upon an extensive review of the authorities they decided that advantage could not be taken of it after verdict.' * * * In *Commonwealth* v. *Thompson*, 4 Phil. 215, it was held that, although the alienage of a juror is good cause of challenge, the court will not set aside the verdict of the jury in a criminal case on that ground, where the trial has been allowed to proceed without any objection having been made to the juror's disqualification, even where there is evidence, from the affidavits of the juror and the prisoner, that the fact of alienage was not disclosed by the one, nor known to the other, before the trial. This decision is not binding upon us, it is true. We cite the case because the reasoning of Judge Allison in support of the above conclusion commends itself to our judgment as a sound and convincing exposition of the law upon the subject. The decisions of the courts of the other states upon the subject are not harmonious, but the weight of authority seems to be in favor of the conclusion we have reached, namely, that, under the circumstances to which we have alluded, the court below wisely exercised the discretion committed to it in holding the alienage of the juror to be insufficient reason for setting aside the verdict. A collection of many of the decisions

will be found in *State* v. *Pickett*, 103 Iowa, 714, 73 N. W. 346, 39 L. R. A. 302."

In *Territory* v. *Harding*, 6 Mont. 323, 12 Pac. 750, the Montana statute provided for the challenging of the grand jury before it was sworn, and that a failure to make the challenge should be deemed a waiver of the right to object, and it was held that defendant had waived his right of challenge and could not afterwards object that one of the grand jurors was not a citizen of the United States, although he did not learn that fact until after the indictment was found and returned into court.

In *Territory* v. *Hart*, 7 Mont. 58, 14 Pac. 774, and 7 Mont. 496, 17 Pac. 720, the court said: "The juror Doniothy, who was challenged on account of alienage, was permitted by the defendant to sit in this case, through a failure to exercise his right of peremptory challenge; the accused having two peremptory challenges unexhausted when he accepted the jury. He thereby waived the objection of alienage, if it were otherwise a good objection, and there was no error of which he could properly complain. It has been repeatedly decided that alienage is a disqualification of a juror which the defendant may waive either expressly or by failure to object at the proper time. (*Territory* v. *Hart*, 7 Mont. 42, 14 Pac. 774.)" This position was held by the court after thorough investigation and long consideration of the authorities.

Following provisions relating to challenges, the code provides that, if the challenge to the panel is allowed, the grand jury are prohibited from inquiring into the charge against the defendant by whom the challenge is interposed, and that, if a challenge to an individual grand juror is allowed, he cannot be present or take part in the consideration of the charge against the defendant who interposed the challenge. (Rev. Laws, 7008, 7009.)

Section 7010, which provides that "a person held to answer for a public offense can take advantage of any objection to the panel or to an individual grand juror in no other mode than by challenge," is similar to the California statute. (Kerr's Cyc. Pen. Code, sec. 901.)

In *People* v. *Arnold,* 15 Cal. 479, the court said: "The defendant was held to answer before the finding of the bill. He was then bound to make his objection to the grand jury on their being impaneled. It is argued that the defendant cannot, by the constitution, be tried unless and until indicted by a grand jury; and that this means a grand jury constituted according to law; and that a bill by a grand jury not so constituted is a nullity. But the answer is that the legislature may constitutionally prescribe rules of practice in criminal or civil cases, and that among these is the provision as to the time and mode of excepting to irregularities of proceeding; and it is ordained that exception to the grand jury shall be made at a particular time. In many of the states, exceptions to particular jurors or to the panel are required to be made by plea in abatement and cannot be heard unless so made; yet the same constitutional provisions in substance obtain in those states, and the same argument would hold that this practice, long acquiesced in and upheld without objection by the courts, is unconstitutional."

In *State* v. *Romero,* 18 Cal. 94, it is said in the opinion: "If the prisoner were refused the privilege of challenging the grand jury in and by the court of sessions, the indictment is insufficient and worthless; it is not, in other words, a legal indictment, because not found by a body competent to act on the case; but, to have this effect, the prisoner must have applied for leave or requested permission to appear and challenge the jury. It was not the duty of the court of sessions to bring him into court for the purpose of exercising this privilege. It is the prisoner's business to know when the court meets and, if he desires to challenge the jury, to apply, if in custody, to the court, to be brought into court for that purpose; and, if he fails to do this, he waives his privilege of excepting to the panel or any member."

However, the better practice prevails in this state of having persons held to answer brought into court and given an opportunity to challenge the grand jury at the time it is impaneled.

In *People* v. *Henderson*, 28 Cal. 469, the defendant, under indictment for murder, moved to set aside the indictment on the ground that one of the grand jurors was not a taxpayer and one of them was not a citizen at the time the grand jury was summoned, although he was naturalized before it was impaneled. The court said: "Conceding the point to be otherwise good, under these circumstances the objection came too late, when taken for the first time after indictment found. The objection should have been made by challenge at the time of the impaneling of the jury. (Crim. Prac. Act, secs. 183, 189, 297; *People* v. *Colmere*, 23 Cal. 632; *People* v. *Arnold*, 15 Cal. 479; *People* v. *Chung Lit*, 17 Cal. 322; *People* v. *Romero*, 18 Cal. 93.) "

In *United States* v. *Gale*, 109 U. S. 67, 69, 3 Sup. Ct. 3, 4, 27 L. Ed. 857, it is said in the opinion: "We have no inexorable statute making the whole proceedings void for any irregularities. * * * It seems to be requisite that all ordinary objections based upon the disqualification of particular jurors, or upon informalities in summoning or impaneling the jury, where no statute makes proceedings utterly void, should be taken *in limine*, either by challenge, by motion to quash, or by plea in abatement. Neglecting to do this, the defendant should be deemed to have waived the irregularity. It would be trifling with justice and would render criminal proceedings a farce, if such objections could be taken after verdict, even though the irregularity should appear in the record of the proceedings."

In *Foreman* v. *Hunter*, 59 Iowa, 550, 13 N. W. 659, it was held that a verdict rendered by a jury, two of whose members were aliens, was erroneous but not void; that the objection might be considered on appeal, but could not be taken by writ of *habeas corpus*.

In *Kaizo* v. *Henry, High Sheriff of Hawaii*, 211 U. S. 148, 29 Sup. Ct. 42, 53 L. Ed. 125, it was said that the objection that eight of the grand jurors were not citizens of the United States could not be taken by writ of *habeas*

*corpus* but by writ of error, which is equivalent to a writ of appeal in the state courts. The court said: "Disqualifications of grand jurors do not destroy the jurisdiction of the court in which an indictment is returned, if the court has jurisdiction of the cause and of the person, as the trial court had in this case. (*Ex Parte Harding*, 120 U. S. 782, 7 Sup. Ct. 780, 30 L. Ed. 824; *In re Wood*, 140 U. S. 278, 11 Sup. Ct. 738, 35 L. Ed. 50; *In re Wilson*, 140 U. S. 575, 11 Sup. Ct. 870, 35 L. Ed. 513.) See *Matter of Moran*, 203 U. S. 96, 104 27 Sup. Ct. 25, 51 L. Ed. 105. * * * The objection may be waived, if it is not made at all or delayed too long. This is but another form of saying that the indictment is a sufficient foundation for the jurisdiction of the court in which it is returned, if jurisdiction otherwise exists. That court has the authority to decide all questions concerning the constitution, organization, and qualification of the grand jury, and if there are errors in dealing with these questions, like all other errors of law committed in the course of the proceedings, they can only be corrected by writ of error."

In *State* v. *Larkin*, 11 Nev. 325, Chief Justice Hawley, speaking for this court, said: "From these facts it appears that at the time the grand jury was impaneled defendant was not held to answer before it for any offense. He, however, had the privilege, under the ruling of the court, as well as by virtue of the provisions of section 276 of the criminal practice act, to move to set aside the indictment 'on any ground which would have been good ground of challenge either to the panel or any individual grand juror.' * * * Having refused to exercise this privilege, he is not in a position to complain of the ruling of the court. (*People* v. *Romero*, 18 Cal. 93.)"

This is equivalent to saying that the accused is required to interpose his objection to the grand jury at the time provided by the statute, which in that case was before pleading to the indictment because he had not been held to answer, and which in this case is at the impanelment of the grand jury because petitioner had been held to answer.

**3.** As the state is disposed to prosecute and could have proceeded by information, it is not apparent that special injury will result to the accused by allowing the trial to proceed upon the indictment. Differently from a foreigner who might be unfamiliar with our language or methods, or without sympathy for our institutions, the fact that the member of the grand jury to whom objection is so seriously made is a senator in a sister state leads to the conclusion that he is a citizen of the United States and of more than ordinary ability and understanding of our laws. It appears that he has been living and following industrial pursuits in this state for the most of the time during the last year or two, and that his only disqualification for being a good grand juror is his intention to retain his residence in Wyoming. Men sometimes maintain residences in different places, although allowed only one legal residence as an elector.

In order to sustain the contention of the petitioner, we would have to hold contrarily, not only to numerous decisions which are in conflict with others, but to the opinions of text-writers as generally expressed, and we would have to set aside the plain provisions of our code. The district judge reviewed a number of authorities and properly held that the accused had waived his right to challenge the grand jury.

**4.** The writ of prohibition will issue only when there is an exercise of functions without or in excess of jurisdiction. (Rev. Laws, 5708; *Knight* v. *District Court*, 32 Nev. 346, Ann. Cas. 1912D, 143; *Turner* v. *Langan, District Judge*, 29 Nev. 281.)

The application for the writ is denied.

NORCROSS, J.: I concur.

McCARRAN, J., dissenting:

I regret that I cannot concur in the opinion rendered by my learned associates. My investigation of this vital and important matter leads me to reason it out along

different lines from that followed in the prevailing opinion.

On September 24 the petitioner was held by the justice of the peace of Wells township to answer to the charge of grand larceny and admitted to bail. On the 23d of September, 1913, the judge of the district court, in and for Elko County, and Isaac Griswold, one of the county commissioners of the county, proceeded, as the record discloses, to select a grand jury for the fall (October) session of the district court; that the judge and commissioner as a result of their proceedings certified to the clerk a list of twenty-four names, as the certificate set forth, selected from the qualified jurors of said county as grand jurors for the fall (October) session of the district court. On the list so certified appears the name of W. A. Hyde. On the 24th of September, the clerk, pursuant to order, issued a venire directed to the sheriff of the county commanding him to summon the twenty-four persons named in the list certified to him by the judge and commissioner, commanding them to be present at the district court on the 8th day of October, at 10 o'clock a. m. On the day designated in the venire, to wit, the 8th day of October, the court selected from the number responding to the summons seventeen members, among which was W. A. Hyde. The court then asked if there was any challenge to the panel of the jury or to any individual juror. It appears from the testimony of the district attorney that at this time Mr. Jas. A. Dysart, one of the attorneys for the petitioner, was in court.

The minutes of the court set forth: "There being no challenges, the court appoints Frank Fernald, Sr., as foreman of said grand jury and instructed them as to their duties; the grand jury then retired for deliberation and investigation."

The grand jury so impaneled returned an indictment against petitioner in which indictment he is charged with the crime of grand larceny. After the filing of the indictment the petitioner appeared in court, with his attorneys,

and moved to quash the indictment upon the ground that it was found by a body of men which was not in law and in fact a constitutional grand jury, and that said accusatory paper returned to said court was worthless and void as an indictment and the court had no jurisdiction to try the defendant upon it.

In support of their motion to quash, several affidavits were filed, the most significant of which is that of C. E. Gundlach, which reads as follows: "C. E. Gundlach, being duly sworn, deposes and says: That he is a duly appointed, qualified, and acting constable of the town of Metropolis, county of Elko, State of Nevada, and was, during all the time hereinafter mentioned, such constable; that he has known one W. A. Hyde, who appeared and acted as one of the members of the grand jury, who returned an indictment against the above-named defendant on the 9th day of October, 1913, A. D., in the county of Elko, State of Nevada, for more than two years last past; that he has seen the said W. A. Hyde at various and divers times in and about the town of Metropolis, county of Elko, State of Nevada, for the past two years; that during the year 1912, A. D., your affiant was deputy registration officer, duly appointed and qualified for the precinct of Metropolis, in the county of Elko, State of Nevada; that in the discharge of his duties as such registration officer, a few days before the closing of the list of registered voters, in the month of October, 1912, A. D., your affiant approached the said W. A. Hyde and asked him if he wished to register as an elector of the county of Elko, State of Nevada, for the coming general election of 1912, A. D.; that in reply to said request of your affiant the said W. A. Hyde stated to your affiant that he did not wish to register as an elector in the county of Elko, State of Nevada, for the reason that he did not reside in the county of Elko, or the State of Nevada, or the precinct of Metropolis; that rather at the time of said conversation he was a resident of the State of Wyoming; that he was at said time of said conversation the duly elected, qualified, and acting state senator of the State of Wyoming; that he intended

to attend the session of the legislature of that state, which would convene in January of the year 1913, A. D.; that an attempt would be made at that time to unseat him as a member of said legislature upon the ground that he was a nonresident of the State of Wyoming; that if he signed the registration roll in the county of Elko, State of Nevada, he would legally become a resident of the State of Nevada, which it was his intention not to do; that thereafter your affiant saw the said W. A. Hyde in and about the town of Metropolis, State of Nevada, until the beginning of the year 1913, A. D., when he departed from the said town of Metropolis to attend the session of the legislature then beginning in the State of Wyoming; that your affiant lives in the town of Metropolis, in the county of Elko, State of Nevada, and has so lived during the times herein mentioned; that he was in the town of Metropolis, county of Elko, State of Nevada, continuously from the first of the year 1913 to the 1st of March, 1913, and that during said two months he never saw the said W. A. Hyde in or about the town of Metropolis, county of Elko, State of Nevada; that on or about the 1st of March, 1913, A. D., he met the said W. A. Hyde in the town of Metropolis, county of Elko, State of Nevada, and that the said W. A. Hyde told your affiant that he had just returned from the session of the legislature in the State of Wyoming, which had just adjourned in that state, *sine die,* and the said W. A. Hyde at the said time told your affiant that the legislature of the State of Wyoming had failed to unseat him as a member of said body and that he was at the time of said conversation a member of said body and a state senator of the State of Wyoming and would continue so to be until the next general election in the State of Wyoming, in the year 1914, A. D."

No counter affidavits were filed by respondent.

Section 8 of article 1 of the constitution of Nevada prescribes: "No person shall be tried for a capital or other infamous crime (except in cases of impeachment, and in cases of the militia when in actual service, and the land and naval forces in time of war, or which this state

may keep with the consent of Congress in time of peace, and in cases of petit larceny under the regulation of the legislature) except on presentment or indictment of a grand jury," etc.

Section 27 of article 4 of our constitution prescribes: "Laws shall be made to exclude from serving on juries, all persons not qualified electors of this state, and all persons who shall have been convicted of bribery, perjury, foregery [forgery], larceny or other high crimes, unless restored to civil rights," etc.

As to who are qualified electors within the State of Nevada, section 1, article 2, the constitution prescribes: "Every male citizen of the United States (not laboring under the disabilities named in this constitution) of the age of twenty-one years and upwards who shall have actually, and not constructively, resided in the state six months, and in the district or county thirty days next preceding any election, shall be entitled to vote for all officers that now are or hereafter may be elected by the people," etc.

Following the provisions and directions of the constitution heretofore quoted, the legislature of this state in 1873 (Stats. 1873, c. 65) enacted a statute entitled "An act concerning juries," section 1 of which reads as follows: "Every qualified elector of the state, whether registered or not, who has not been convicted of treason, felony, or other infamous crime, and who is not rendered incapable by reason of physical or mental infirmity, is a qualified juror of the county in which he resides, or of the county to which it is attached for judicial purposes."

From the record in this case it is manifest that the district judge and commissioner in attempting to select the grand jury in question herein sought to follow section 4940 of the Revised Laws, which in part reads as follows: " * * * Grand jurors may be selected from the qualified jurors of the county whether their names are or are not upon the list selected by the board of commissioners," etc.

It is the contention of respondent in this case that, admitting that the juror was not a qualified elector in

this state and was in fact by his own act, choice, and declaration a citizen of another state, this disqualification could only be taken advantage of by petitioner by challenge to the jury at the time of the impanelment of the grand jury. In this respect it must be observed that the statute (Rev. Laws, 7010) prescribes: "A person held to answer for a public offense can take advantage of any objection to the panel or to individual grand jurors in no other way than by challenge."

The grounds of challenge to the panel and the only grounds prescribed by statute at all are those specified in section 7004 of the Revised Laws, as follows: "A challenge to the panel may be interposed for one or more of the following causes only: (1) That the requisite number of ballots was not drawn from the jury box of the county as prescribed by law. (2) That the notice of the drawing of the grand jury was not given as prescribed by law. (3) That the drawing was not had in the presence of the officers or officer designated by law."

Section 7005 prescribes the grounds on which challenge may be interposed to the individual grand juror as follows: "A challenge to an individual grand juror may be interposed for one or more of the following causes only: (1) That he is a minor; (2) that he is an alien; (3) that he is insane; (4) that he is a prosecutor upon a charge against the defendant; (5) that he is a witness on the part of the prosecution, and has been served with process or bound by an undertaking as such; (6) that a state of mind exists on his part in reference to the case, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging," etc.

The contention of respondent is that, as petitioner was present by his attorney at the time of the impanelment of the grand jury, it was his duty, if he saw fit, to challenge either the panel or the individual members of the jury, and especially in this instance it was his duty to challenge the juror Hyde upon the ground that he was not a qualified elector, and they contend that, having failed to challenge at the impanelment of the jury and

before the indictment was found, petitioner has waived his right of challenge and cannot prevail herein.

It is fundamental, in cases of this class, that an indictment must be found and presented by a lawful grand jury. The intention of the legislature, and, moreover, the intention of the framers of the constitution of this state, is too clearly expressed in the sections of the constitution and code above quoted to be misunderstood. It was the intention of the framers of the constitution to safeguard life and individual liberty, and to that end they wisely provided and expressly prescribed as to who should be eligible for jury duty in this state and as to who should be excluded. Section 27, article 4, of the constitution, is mandatory in its exclusion. It provides that laws shall be made to exclude from service all persons not qualified electors of this state. In an issue of such moment as the one at bar a defendant is entitled to demand the observation of all the formalities of the law. It is his constitutional privilege to stand upon his strict legal rights, and he is entitled to strict compliance, on the part of judicial and ministerial officers, to the legal formula prescribed.

In the case of *State* v. *McNamara*, 3 Nev. 75, this court said: "An indictment found by a jury not legally constituted cannot be valid." In that case this court quoted approvingly from the Supreme Court of California in the case of *People* v. *Coffman*, 24 Cal. 234: "The defendant is entitled to have all the formalities observed that are prescribed by law for the summoning, drawing, and impaneling of the jury, and, if any omission or irregularity in that respect occurs, he is entitled to have the same corrected, and, if not so corrected upon its being pointed out by the defendant, it is error."

The contention of respondent, in my judgment, is answered by the fundamental proposition that it is the right of the accused to have the question of his guilt passed upon by a competent grand jury, before he can be called upon to answer to the charge of crime, and a competent grand jury means one composed of good and lawful men and a grand jury composed of men not excluded by constitutional provision. A man should not

be put upon his trial upon a charge preferred by a body of men who are precluded by constitutional provision and by statutory enactment from preferring a charge against him.

Section 27, article 4, of the constitution, excluding from service on juries persons not qualified electors, either means exactly what it says or it means nothing. It either means that none but qualified electors can constitute a valid jury or else it has no force or effect whatever. By that constitutional provision qualified electorship is made a prerequisite for every member of a valid jury. It cannot, in my judgment, be successfully argued that this constitutional provision could be waived by one accused even by stipulation, much less by silence. At common law it was necessary that indictments should be found by a grand jury composed of good and lawful men. (2 Hawkins P. C. 309.) In this respect Chitty in his treatise on Criminal Law says: "It is perfectly clear that all persons serving upon a grand jury must be good and lawful men, by which it is intended that they must be liege subjects of the king and neither aliens nor persons outlawed even in a civil action," etc.

At common law, as will be seen by the earlier authorities and text-writers on the subject, none but those who were liege subjects of the king and who possessed this prerequisite could serve as grand jurors. This principle has been carried down to the present time by constitutional and statutory enactment, and it is the same principle that is expressed in our constitution, wherein it expressly excluded from service on juries all persons not qualified electors of the state. (Sec. 27, art. 4, Constitution of Nevada.)

By our constitution and by the laws enacted under it providing for the selection of jurors, qualified electorship is made a fundamental prerequisite for the right and privilege to serve on jury duty. By this prescription the class from which good and lawful jurors may be selected is limited and defined, to the exclusion of all others. It is a constitutional demand of elimination which no one affected thereby can waive either expressly or by silence.

As was said by the Supreme Court of Utah in the case of *Hopt* v. *Utah*, 110 U. S. 574, 4 Sup. Ct. 202, 28 L. Ed. 262, that which the law makes essential in proceedings involving the deprivation of life or liberty cannot be disposed of or effected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods.

Eliminating everything in this case save the validity of the jury itself, would any one seriously contend that the district judge in this case might have impaneled a valid grand jury of seventeen men, every one of whom was a citizen of Wyoming, sojourners in this state? Manifestly not. The mere suggestion is ludicrous. But why not if the members themselves made no demurrer and were willing to serve? When we pause to ask the question, the reason appeals to a more serious condition. The whole body of such a grand jury would be void by reason of a fundamental defect, by reason of the fact that by the constitution of this state they were excluded from the right or privilege of being summoned or to serve as jurors, although qualified in every other respect. Such a body would be devoid of that fundamental requisite which had its origin in the ancient precept that each to be qualified must be a liege subject of the king and which, carried down into modern times and embodied in the constitution of this state, is prescribed to be qualified electorship. If the whole panel under such conditions would be void, will the mere fact that sixteen good and lawful men are impaneled and one not possessed of that qualification is impaneled with them constitute a valid jury, when the law says that seventeen men possessing the qualification of electorship shall constitute a grand jury panel? If seventeen disqualified men would constitute a void jury, how many less than seventeen disqualified men would constitute a valid jury panel? If a jury is void by reason of constitutional and statutory provision, how can a mere waiver of objection to its void nature make it valid?

The statute provides that grand jurors may be selected from the qualified jurors of the county, and the qualified

jurors of the county are limited to those who are qualified electors. If, by statutory enactment, the field from which grand jurors might be selected was not limited to the qualified electors of the county, or if the court had general powers in the selection of grand jurors, or if the constitution did not exclude from jury duty all persons not qualified electors, a different reasoning might follow, and statutes such as ours might be considered as directory in their nature. But the legislature had no power to go beyond the limit prescribed for it by the constitution, even if it had been so inclined, which is not the case here, and, in my judgment, the courts have no authority to sanction a departure from that which is an imperative provision of the constitution. In the selection and impaneling of grand jurors, courts should be strict in discountenancing and discouraging irregularities, and a more strict compliance with the plain provisions of the statute, in matters of this kind, would avoid much of what is termed "the law's delay."

The Supreme Court of Tennessee, in the case of *State v. Duncan*, 7 Yerg. 275, speaking through Mr. Chief Justice Catron, said: "Suppose an indictment was found by a grand jury, no person composing of which was qualified? All will admit the indictment would be merely void in fact and ought not to be answered if the fact was made legally to appear. So, if any one be incompetent, it is equally void, because the proper number to constitute the grand inquest is wanting, and because he who is incompetent shall not be one of the triers of the offense at any stage of the prosecution."

Section 1025 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 720) provides: "No indictment found and presented by a grand jury in any district or circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

In speaking upon the application of this statute, Mr. Justice Harlan, in the case of *Crowley v. U. S.*, 194 U. S.

461, 24 Sup. Ct. 731, 48 L. Ed. 1075, speaking for the Supreme Court of the United States, said: "The disqualification of a grand juror is prescribed by statute and cannot be regarded as a mere defect or imperfection in form; it is a matter of substance which cannot be disregarded without prejudice to an accused."

The prevailing opinion in the case at bar states: "As the state is disposed to prosecute and could have proceeded by information, it is not apparent that special injury will result to the accused by allowing the trial to proceed upon the indictment. Differently from a foreigner who might be unfamiliar with our language or methods, or without sympathy for our institutions, the fact that the member of the grand jury to whom objection is so seriously made is a senator in a sister state leads to the conclusion that he is a citizen of the United States and of more than ordinary ability and understanding of our laws. It appears that he has been living and following industrial pursuits in this state for the most of the time during the last year or two, and that his only disqualification for being a good grand juror is his intention to retain his residence in Wyoming. Men sometimes maintain residences in different places, although allowed only one legal residence as an elector."

If we were to follow this reasoning to its logical conclusion, the judge of the district court of Elko County might have impaneled the entire legislature of the State of Wyoming, if by chance they happened to be sojourning in the community, or, being enticed by the fertility of our soil or the glory of our scenery, they came to Elko County to remain between sessions. The seriousness of the proposition before this court will admit of no such reasoning in my judgment. It is not a question of prejudice to the defendant, or to any person, nor is it a question of overriding the constitutional prohibition, so that citizens of another state, however eminent they may be, can be impaneled to sit as members of a body, the functions and powers of which invade every avenue of our social compact and by which any one of our people may be put upon trial for his liberty or his life. The

question is not how it may affect any one or every one; it is rather: Is the panel legally constituted? Are its members drawn from that class within the county possessed of the constitutional demand of qualified electorship? The constitution and the statutes prescribe the limits to which a court may go in selecting grand jurors, the manner of selection, and, above all, the citizenship from which the individual members of the panel may be selected and limits the court in its selection to that class of individuals of the county who, by act and intention, have brought themselves within the roll of electorship.

A grand jury is not a body, the importance of which should be lightly regarded; it has its sanction in the constitution, and the constitution prescribes the qualifications for its component membership; its functions and offices are sacred to the institutions of our government; it investigates our public officers; it invades the operation of the government closest to the people and inquires into the efficiency and honesty of public servants; but most of all its investiture gives it the right to indict and thereby to challenge the individual to his right of liberty or life. The fundamental laws having prescribed strict rules for the selection, summoning, and impanelment of such a body, and, having declared that the prime requisite of every member of that body is qualified electorship in the county, is it within the province of the courts to say that anything less than the demand and prerequisite of the constitution and the laws enacted under it will suffice?

The reasoning laid down in the case of *Doyle* v. *State*, 17 Ohio, 224, in a proceeding almost identical to this, and where the statute relating to jurors provided that they should have the qualification of electors, is especially applicable here; it having been contended there, as in this case, that the objection was interposed too late. That court said in substance: No objection can come too late which discloses the fact that a person has been put to answer a crime in a mode violating his legal and constitutional rights. The doctrine of waiver has nothing to do with criminal prosecution. A person can be put

upon his defense on a charge of crime and be convicted of crime only in the exact mode prescribed by law; and, whenever it shall be made manifest that the legal rights of the person charged have been violated, the court should permit the accused to have the benefit of the error.  The courts have the power only to try a person who has been indicted for crime.  What an indictment is is a matter of law.  Who shall constitute a grand jury, how it shall be summoned, composed, and organized is all matter of constitutional and statutory provisions.  No man can by his consent or will constitute a grand jury; no man by express consent can confer jurisdiction upon a court to try him for a crime; no man by express consent can make that an indictment which is not an indictment.

The trial judge in his able decision rendered on this point, and which is before us in the record, said that if the objection had been raised to the juror Hyde in time he would have been excused.  How could the petitioner's waiver or silence, or failure to raise the objection, make that a grand jury which was not a grand jury in law? It was not for petitioner to make the grand jury, but for the statute, and that which was void as being without qualification could create nothing more valid than itself; hence the indictment was void.  To say that a person charged, by entering a plea of "not guilty" to a void and invalid indictment, could confer upon the court power to try and sentence him does not ring true either in reason or in law.  (*Doyle* v. *State*, 17 Ohio, 224; *Crowley* v. *U. S.*, 194 U. S. 461, 24 Sup. Ct. 731, 48 L. Ed. 1075; *U. S.* v. *Lewis*, 192 Fed. 633.)

The respondent contends, and the prevailing opinion holds, that petitioner should have made this objection at the time of impanelment of the grand jury.  How can this be true when the objection here raised, being that the juror Hyde was not a qualified elector, is not embraced in any of the grounds prescribed by statute for challenge to the individual grand juror.  It cannot be successfully argued that the ground of challenge prescribed by statute

under section 7005 "that he is an alien" can apply to cover the objection raised here.   The term "alien," by its general acceptation and in contemplation of statutes, generally means a citizen of a foreign country, one born out of the United States and not naturalized.   (*Hennessy* v. *Richardson*, 189 U. S. 25, 23 Sup. Ct. 532, 47 L. Ed. 697; Words and Phrases Judicially Defined, vol. 1, 299.)

The objection here raised is one that comes from the lack of compliance with specific constitutional provision; hence there is no provision of statute limiting the time in which or prescribing the time at which this question may be raised.   It is not embraced within any of the grounds set forth in section 7005.   It being a constitutional provision, bearing upon the constitutional rights of the individual, he has the right to raise it at any time the same as that of jurisdiction.   In my opinion the question here raised is not controlled by any statute. The time in which it may be raised or at which it may be raised is not limited by our code, and it must depend upon principles of general law applicable to criminal proceedings in civilized countries, and the whole question falls squarely within the rule as laid down by the Supreme Court of the United States in the case of *Crowley* v. *U. S.*, *supra*, and in that case, under laws and conditions very much analogous to those presented in the matter at bar, the court granted the relief prayed for.

I recognize that the prevailing opinion in this case is in some respects supported by authority; but in view of our constitutional provisions and the statutes enacted under it, and reading them in the light of what in my judgment was the true intention of the framers of our government, I cannot reach any other conclusion than that, in view of all the facts presented by the record here, the writ prayed for in this case should have been granted.